Filed 7/12/19; pub. order 8/9/19 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| S.C.,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>G.S.,<br><br>      Defendant and Respondent;<br><br>SANTA CLARA COUNTY<br>DEPARTMENT OF CHILD SUPPORT<br>SERVICES,<br><br>      Intervenor and Appellant. | H045093<br>(Santa Clara County<br>Super. Ct. No. 1-95-CP-004066) |

This dispute centers on child support arrears owed by respondent G.S. (father) to respondent S.C. (mother) pursuant to an order issued by the trial court in 1995.[1] In March 2015, appellant and intervenor Santa Clara County Department of Child Support Services (the Department) brought a motion seeking to increase father's monthly child support payments. In the course of litigation over the motion, father for the first time

---

[1] Neither father nor mother has participated in this appeal.

informed the Department and the trial court that he had been incarcerated from 1998 to 2005. Prior to 2015, father had not sought a modification of the child support order.

In February 2016, the trial court granted the Department's motion to increase father's monthly payments but also, on the court's own motion, awarded father "equitable credit" for father's period of incarceration. Invoking its authority under Family Code section 290,[2] the trial court reduced the amount owed by father in child support by approximately $70,000.

The Department appeals the trial court's February 2016 order, arguing that the trial court lacked authority to retroactively adjust father's arrears. For the reasons discussed further below, we agree. Although legislation enacted in 2010 and 2015 suspended the accrual of child support for incarcerated parents, these statutes do not apply retroactively. Father's child support order was issued in 1995, and he did not seek modification of it either when he was committed to prison or upon his release. The trial court lacked the authority in 2016 to reduce father's arrears by the amount father had accrued during his incarceration from 1998 to 2005. We therefore reverse the order.

## I. FACTS AND PROCEDURAL BACKGROUND

The facts in this appeal are undisputed. Father is the parent of daughter A.C., born in 1994. In 1995, following a request by mother for child support pursuant to a civil paternity action in which father participated, the trial court ordered father to pay $360 per month in child support (the 1995 order). The Department did not participate in the paternity action leading to the 1995 order.

Father was incarcerated from approximately May 1998 to July 2005. Father never sought to modify, quash, or otherwise terminate the 1995 child support order based on his

---

[2] Unspecified statutory references are to the Family Code.

incarceration. In approximately 2004, mother sought assistance from the Department in enforcing child support against father.[3]

In March 2015, the Department filed a notice of motion and requested a hearing for the purpose of increasing father's monthly payment to liquidate his arrears. The Department noted it was requesting an order to "[a]dd/[i]ncrease liquidation of arrears consistent with the obligor's income," and, more specifically, that father be ordered to pay at least $500 per month to liquidate his debt. In further support of its request, the Department stated that the child was now emancipated, father owed approximately $113,000 in arrears, including interest, and the previously-ordered monthly payback of $40 was insufficient to pay the accruing interest charges of over $400 per month.

In July 2015 the parties appeared for a hearing on the Department's motion. The Department noted that father had offered to pay $80 per month because he believed he would soon get a job. Mother objected to the amount as too low and that it was a method of "delay," but she stated that $100 would be "sufficient." The trial court told father he needed to secure full-time employment. The trial court scheduled hearings for both August and December 2015 to make sure father was working at least 25 hours a week. The trial court issued an interim order finding that father owed approximately $114,000 in child support arrears and ordering monthly payments of $80.

At the end of the July 2015 hearing, father asked, "how do I go about filing a motion?" When the trial court asked father about the subject of the motion, father replied "[f]or arrears." When the trial court expressed confusion, noting they were already there "on arrears," the Department's representative replied, "We're here on the arrears payment, Your Honor. Father's disputing the total amount of arrears which are in excess

---

[3] On May 6, 2010, the trial court issued an "order after hearing" in which the trial court found father owed arrears of $93,943 and ordered father to pay $40 per month beginning May 1, 2010. The 2010 order does not reference father's incarceration.

3

of $114,000 right now. [¶] Father's alleging that he was incarcerated for several years." This was apparently the first time that father had informed the Department or the trial court that he had been to prison.

The trial court told father that he had to bring written proof that he had been incarcerated. Father asked, "[d]o I have to file the motion . . . or just bring you the paperwork?" The court responded, "why don't you get [the paperwork] before August and then you can bring it up to me at that point. The Department is not anxious to have a lot of motions filed. If you can show evidence that you were incarcerated, it may be that talking together you can come to an agreement and not need a motion."

The trial court filed an order in August 2015 that increased father's monthly payments to $100.[4] On December 9, 2015, father and the Department appeared for a further hearing on the issue of arrears. Mother was not present. The attorney for the Department told the trial court that they were before the court on "the Department's motion to increase the arrears payback. . . . . Father owes in excess of $100,000 in arrears. We were asking for that to be increased." The Department also stated "[t]he other issue of note is that the Court on its own order did add a determination of arrears to be heard today. . . . Father alleged prior periods of incarceration. . . . He was ordered to provide some documentation today from his . . . [¶] parole agent. It does look like he has a letter that states he was in custody from May 3rd of 1998 through July 3rd of 2005."

The Department stated that mother was not amenable to forgiving or waiving the arrears, and that because of the 1995 support order the court did not have the equitable power to forgive the arrears accrued during father's incarceration. In support of its position, the Department relied on this court's decision in *County of Santa Clara v. Wilson* (2003) 111 Cal.App.4th 1324 (*Wilson*).

---

[4] The record on appeal does not contain a transcript from the August 2015 hearing.

4

The trial court asked the Department, "we're here today because of Father's request?" The Department replied, "Actually, Your Honor, we're on today because the Department requested an increase in the arrears payment. The Court after hearing Father's testimony regarding his incarceration periods asked our office to prepare an audit which we did and we served him." As of the date of the December 2015 hearing, the Department calculated father's arrears at $115,784.95. The Department reiterated its stance that pursuant to *Wilson* "retroactive modification is not permitted and the arrears that accrued prior to the motion cannot be forgiven." The trial court stated it would "do some research because I remember I did this once before and I found a means of equitable relief and I need to go back and find it again. It was a narrow, narrow passageway."

The next day, on December 10, 2015, the trial court issued an order taking under submission "the issue of arrears." In its order, the trial court found that the Department's calculation of arrears done in July 2015 "does not take into account incarceration time." The trial court ordered the Department to "recalculate the arrears, taking into account and suspending obligation for payment by father for the months he was incarcerated, plus one month after his release." In the order the trial court set a new hearing date of January 28, 2016.

On January 28, 2016, all parties, including mother, appeared for a final hearing on the arrears owed by father. The trial court asked the Department whether its latest calculation of father's arrears "reflects the most recent order of the Court giving credit to Father from 1998 to [20]05." The Department stated that it had done a calculation pursuant to the court's order that resulted in an arrears total of $40,747.45.

The Department again disputed that the trial court had authority to forgive the arrears father accrued while incarcerated. The trial court heard testimony from father that, based on his current wages, father had only $300 per month after he paid his bills.

5

The trial court further noted that the interest alone on his arrears amounted to over $400 per month.

The trial court stated that it "intend[ed] to essentially sustain my previous ruling, that is order that pursuant to Section 290 of the Family Code, and other equitable principles, that the period . . . May 1998 through I think August 2005, because of his incarceration, support during that time period should be suspended. [¶] And that's the extent of my ruling. I'm not affecting interest. I'm not affecting anything else."

Mother objected, stating "it's not my fault that he went to jail." She argued that the system was being too "forgiving" and noted that she had worked two jobs to support her family. The trial court replied, "[i]f in May 1998 [father] sent a letter to the Department saying I've just gone to prison, what do I do to suspend my payments? The Department would have in May of 1998 helped him in one manner or another file the appropriate papers so that his payments would be suspended for that time period that he was in jail. So you would have the exact same argument, which I respect, but he would then be entitled to relief, legal relief."

The trial court "sustain[ed] the prior finding giving equitable credit for the time period described" and found "the amount of arrears to be $40,747.45." The trial court also granted the Department's request to increase the monthly payment of arrears.

On February 1, 2016, the trial court issued a written "Order After Hearing" (some capitalization omitted), finding that father owed child support arrears in the amount of $40,747.45 to be paid in monthly installments of $120 per month and with interest accruing. The order further stated, "Arrearages are set in the amount of $40,747.45, for the period 09/01/1995 through 01/04/2016. Of this, the principal amount is $16,078.61 and the interest is $24,668.84. [¶] Based on Family Code section 290 and equitable consideration the court suspends child support for the period 05/1998 through 07/2005 due to father's lengthy incarceration. [¶] The court makes this order over the objection of the Department of Child Support Services and the objection of the mother." (Some

6

capitalization omitted.)  The order attached the Department's report prepared at the trial court's request that indicated the monthly support amount owed was "0.00" from May 1998 through July 2005.

The Department timely appealed.

## II.  DISCUSSION

The Department argues the trial court lacked authority to issue the February 1, 2016 order because the trial court could not waive child support arrears that father had previously accrued.  For the reasons set forth below, we agree with the Department and conclude the trial court erred.

We first examine our jurisdiction.  In both its original and amended notices of appeal, the Department asserts that this appeal follows an order after judgment under Code of Civil Procedure section 904.1, subdivision (a)(2).  However, in its civil case information statement, the Department asserts that its appeal is taken from an order or judgment under Code of Civil Procedure section 904.1, subdivision (a)(3)–(13), and Family Code section 3554.[5]  The Department's opening brief states that the February 1, 2016 order is appealable under subdivisions (a)(1) and (a)(10) of the Code of Civil Procedure section 904.1 and Family Code section 3554.

Postjudgment orders relating to child support arrears are appealable.  (Code Civ. Proc., § 904.1, subd. (a)(2) [order after judgment].)  In 1995, the trial court issued a final order directing father to pay child support that followed a hearing at which father appeared.  Although the form used for the order was not formally titled a "judgment," the substance of the order was to determine the matter of child support owed by father, and "such a determination is substantially the same as a final judgment in an independent proceeding."  (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368.)  We therefore

---

[5] Family Code section 3554 states that "[a]n appeal may be taken from an order or judgment under this division [relating to support] as in other civil actions."

7

conclude that the February 1, 2016 order is appealable as a postjudgment order under Code of Civil Procedure section 904.1, subdivision (a)(2). (See *Wilson*, *supra*, 111 Cal.App.4th at p. 1325 [reviewing a similar postjudgment order].)

Turning to the merits of the Department's argument, we conclude that the trial court committed clear and reversible error when it sua sponte recalculated father's child support arrears. Child support awards are generally reviewed for abuse of discretion. (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 282.) As we have observed previously, however, "the trial court's discretion is not so broad that it 'may ignore or contravene the purposes of the law regarding . . . child support.' " (*Id*. at p. 283.) The Department does not question the monthly payment schedule set by the trial court but instead contends the trial court lacked authority to waive arrears accrued during father's incarceration. There are no facts in dispute. As the issue presented here is a pure question of law, we review it de novo. (See *In re Marriage of Gruen* (2011) 191 Cal.App.4th 627, 637 (*Gruen*).)

We begin with the Family Code. Each parent has an "equal responsibility" to support the parent's child. (§ 3900.) Child support refers to "a support obligation owing on behalf of a child" (§ 150) and includes "past due support or arrearage when it exists." (*Ibid*.) An order for child support "continues in effect until the order (1) is terminated by the court or (2) terminates by operation of law [pursuant to specified statutes, including section 3901]." (§ 3601, subd. (a).) The duty of support continues "as to an unmarried child who has attained 18 years of age, is a full-time high school student, . . . and who is not self-supporting, until the time the child completes the 12th grade or attains 19 years of age, whichever occurs first." (§ 3901, subd. (a)(1).) "If a parent has been ordered to make payments for the support of a minor child, an action to recover an arrearage in those payments may be maintained at any time within the period otherwise specified for the enforcement of such a judgment, notwithstanding the fact that the child has attained the age of 18 years." (§ 4503.)

8

In terms of modifying support and its impact on accrued support, " '[t]he Legislature has established a bright-line rule that accrued child support vests and may not be adjusted up or down. [Citations.] If a parent feels the amount ordered is too high—or too low—he or she must seek prospective modification.' " (*Stover v. Bruntz* (2017) 12 Cal.App.5th 19, 26 (*Stover*), quoting *In re Marriage of Tavares* (2007) 151 Cal.App.4th 620, 625–626 (*Tavares*).) Numerous statutory provisions state that a court may not retroactively modify a child support order for payments that have already accrued.

For example, section 3603 states that a support order "may be modified or terminated at any time *except as to an amount that accrued before the date of the filing of the notice of motion or order to show cause to modify or terminate*." (§ 3603, italics added.) Similarly, section 3653, subdivision (a), states that "[a]n order modifying or terminating a support order may be made retroactive *to the date of the filing of the notice of motion or order to show cause to modify or terminate, or to any subsequent date*." (Italics added.) Section 3651 also mandates that a support order "may not be modified or terminated as to an amount that accrued before the date of the filing of the notice of motion or order to show cause to modify or terminate." (§ 3651, subd. (c)(1).) Finally, section 3692 provides that "a support order may not be set aside simply because the court finds that it was inequitable when made, nor simply because subsequent circumstances caused the support ordered to become excessive or inadequate."

Taken together, these statutory provisions divest the trial court of " 'discretion to absolve an obligor of support arrearages, or interest thereon.' " (*Stover*, *supra*, 12 Cal.App.5th at p. 26, quoting *Tavares*, *supra*, 151 Cal.App.4th at p. 626.) Therefore, a trial court acts "in excess of the court's jurisdiction" if it modifies support retroactive to any time before the filing of an obligor's modification motion. (*Stover*, at pp. 26–27.)

"That the court label[s] the adjustment a 'credit' rather than a retroactive modification is of no moment. It is the effect of the order that is paramount. (See e.g., *Gruen*, *supra*, 191 Cal.App.4th at p. 640 [" 'regardless of the court's intent or how it

9

labeled the [order], retroactive modification is forbidden' "]; *Tavares*, *supra*, 151 Cal.App.4th at p. 626 [" 'trial court was not required to countenance father's disguised attempts at a prohibited retroactive modification of support' where he claimed he did not wish to 'set aside' prior order but that was 'precisely the effect of his proposal for an accounting and recalculation of arrearages' "].)" (*Stover*, *supra*, 12 Cal.App.5th at p. 27.)

Moreover, "notwithstanding changed circumstances, or a claimed lack of clarity in a court's order assessing child support arrearages, courts have no authority to waive or forgive interest accrued on past-due child support amounts, just as courts cannot retroactively modify or terminate the arrearages." (*In re Marriage of Hubner* (2004) 124 Cal.App.4th 1082, 1089.) As we previously held in our 2003 decision in *Wilson*, a trial court lacks the equitable power to retroactively modify accrued child support based on the obligor's prior incarceration. (*Wilson*, *supra*, 111 Cal.App.4th at p. 1324.)

Applying these well-established principles, we conclude the trial court erred in its February 1, 2016 order. There is no dispute that the 1995 support order was effective when made, that it followed proceedings at which father was involved, and that thereafter father never filed any motion to quash, terminate, or modify the order. It was not until 2015, and after the Department filed its own motion to enforce child support, that father first raised his prior incarceration. The trial court directed father not to file a motion to adjust arrears; instead, the trial court sua sponte ordered the Department to recalculate the arrears owed by father for the period father had been incarcerated.

Whether treated as a motion by father or a sua sponte motion by the trial court, the trial court had no discretion to absolve father of support arrears (or associated interest that was affected by decreasing the overall arrears) that had accrued years earlier. (*Stover*, *supra*, 12 Cal.App.5th at p. 26.) The trial court's ruling effectively waived father's arrears and thus violated the principle that a final support order may not be modified retroactively.

10

It is true that, as we recognized in *Wilson,* a trial court has some "equitable powers" regarding the *enforcement* of the judgment." (*Wilson*, *supra*, 111 Cal.App.4th at p. 1326.) Section 290—which the trial court explicitly relied on in its February 2016 order at issue here—states that "[a] judgment or order made or entered pursuant to this code may be enforced by the court by execution, the appointment of a receiver, or contempt, or by any other order as the court in its discretion determines from time to time to be necessary." (§ 290.)

Under section 290, the trial court has "broad" discretion to fashion orders enforcing family law judgments. (*Cal-Western Reconveyance Corp. v. Reed* (2007) 152 Cal.App.4th 1308, 1318.) However, in exercising that discretion, a trial court may not ignore express statutory requirements. (*Ibid*.) Although a trial court may "determine a parent has satisfied his or her support obligation in a manner other than direct financial payments" (*Tavares*, *supra*, 151 Cal.App.4th at p. 626) or credit the surplus to arrears "where a parent has made payments beyond those ordered," (*ibid*.) "a trial court has no discretion to absolve an obligor of support arrearages, or interest thereon." (*Ibid*.)

The trial court's ruling effectively reduced father's arrears by approximately $70,000. The trial court's order did not simply stay collection of an ordered amount; it eliminated over half of the amount father owed and functioned effectively as a forgiveness of the amount of child support father accrued during his incarceration.

The trial court did not have this authority. In *In re Marriage of Everett* (1990) 220 Cal.App.3d 846, the Court of Appeal held that a trial court had the discretion to order husband to pay down arrears at the rate of $35 per month, as this action was "not a retroactive modification of the arrears but rather an exercise of the court's equitable discretion to enforce its orders." (*Id.* at pp. 854–855 [relying on former Civ. Code, § 4380, the precursor to § 290].) In so holding, the court based this conclusion on the fact that "[t]he order *does not operate to forgive or compromise the outstanding debt* nor does it preclude future modification or future enforcement efforts by way of execution,

11

interception and the like." (*Marriage of Everett*, at p. 855, italics added.) In short, even assuming the trial court's ruling here was purely a matter of enforcement, the trial court abused its discretion by effectively waiving the arrears father accrued during his incarceration instead of merely adjusting the payment schedule to account for father's accumulated debt.

Although courts have held that "it is within the court's equitable power to deny enforcement of the arrears on equitable grounds under certain circumstances," those circumstances are limited to instances in which the parent has otherwise contributed to the care of the child. (*In re Marriage of Wilson* (2016) 4 Cal.App.5th 1011, 1016.) For example, in *Marriage of Wilson*, the court discussed a line of cases that determined a court could deny enforcement of arrears where "the parent who was obligated to pay child support had actually cared for the child in his or her own home." (*Ibid.*) The court addressed a situation where the child had lived with father's parents and father had provided some financial support to them. The court held "in the unusual circumstances of this case" the trial court should consider whether it would be inequitable to enforce some or all of the child support order to the extent it applied to periods where the child lived with grandparents. (*Id.* at p. 1018.) In contrast to these cases where the parent provided some assistance during the relevant period to the child, we have found no support for the application of the equitable power to deny enforcement of child support payments because the obligor was incarcerated.

There is no evidence in this case that father discharged any of his financial obligations to mother while in prison. To the contrary, the record reflects that, through no fault of mother, father was incarcerated for a lengthy period of time during which he accumulated significant arrears and interest for unpaid child support. Mother, on the other hand, worked several jobs to support child. Further, father did not seek to adjust his child support payments until years after he was released from prison. These

12

circumstances do not fall under the limited equitable discretion of the court to deny enforcement of arrears pursuant to section 290.

We recognize that the Legislature in 2010 and 2015 enacted statutes that address the "suspension" of child support for incarcerated parents in certain circumstances.[6] However, those statutes do not assist father because they do not apply to orders issued before 2011. Former section 4007.5, which was enacted in 2010 and expired on July 1, 2015, provided that the obligation to pay support "shall be suspended for any period exceeding 90 consecutive days in which the person ordered to pay support is incarcerated or involuntarily institutionalized, unless the obligor has the means to pay support while incarcerated or involuntarily institutionalized." This prior statute, however, would have afforded father no relief from the 1995 support order, because it only applied "to all child support orders and modifications issued on or after July 1, 2011." (Former § 4007.5, subd. (g).) Current section 4007.5 also has no retroactive effect and therefore does not apply to a support order issued in 1995. (§ 4007.5, subd. (f); *County of San Diego Department of Child Support Services v. C.P.* (2019) 34 Cal.App.5th 1, 8–9.)

## III.  DISPOSITION

The February 1, 2016 order is reversed. The trial court is directed to enter a new order that reinstates the arrears suspended in its February 1, 2016 order. Because G.S. did not appear in this appeal, the Department shall bear its own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

---

[6] Under the prior statute in effect from 2011 to June 30, 2015, "suspend" meant "the child support order is modified and set to zero dollars ($0) for the period in which the obligor is incarcerated or involuntarily institutionalized." (Former § 4007.5, subd. (f).) The current statute defines "suspend" as "the payment due on the current child support order, an arrears payment on a preexisting arrears balance, or interest on arrears created during a qualifying period of incarceration pursuant to this section is, by operation of law, set to zero dollars ($0) for the period in which the person owing support is incarcerated or involuntarily institutionalized." (§ 4007.5, subd. (e)(2).)

13

_____
                                        DANNER, J.


WE CONCUR:




_____
      MIHARA, ACTING, P. J.




_____
      GROVER, J.




*Santa Clara County DCSS v. S.C., et al.*
**H045093**

Filed 8/9/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| S.C., | H045093 |
| | (Santa Clara County |
| Plaintiff and Respondent, | Super. Ct. No. 1-95-CP-004066) |
| v. | |
| G.S., | |
| Defendant and Respondent; | |
| SANTA CLARA COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES, | |
| Intervenor and Appellant. | |

BY THE COURT:

The written opinion which was filed on July 12, 2019, has now been certified for publication pursuant to rule 8.1105(b) of the California Rules of Court, and it is therefore ordered that the opinion be published in the official reports.

_____

                                                               _____

                                                                Danner, J.

_____

                                                                _____

                                                                Mihara, Acting P.J.

_____

                                                                _____

                                                                Grover, J.

| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 1-95-CP-004066 |
|---|---|
| Trial Judge: | Hon. Irwin Joseph |
| Counsel for Intervenor/Appellant: | Xavier Becerra, Attorney General<br><br>Julie Weng-Gutierrez, Senior Assistant Attorney General<br><br>Linda M. Gonzalez, Supervising Deputy Attorney General<br>Ricardo Enriquez, Deputy Attorney General |
| Counsel for Plaintiff and Respondent: | No appearance |
| Counsel for Defendant and Respondent: | No appearance |

*Santa Clara County DCSS v. S.C., et al.*

**H045093**