Filed 4/27/23  Marriage of Ruiz CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of BIANCA KAYLENE RUIZ and JACOB RYAN RUIZ. | |
| BIANCA KAYLENE RUIZ, Appellant, v. JACOB RYAN RUIZ, Respondent. | F083648, F083942 (Super. Ct. No. 19FL-0112) **OPINION** |

-ooOoo-

APPEAL from orders of the Superior Court of Kings County.  Brian N. Chase, Commissioner.

Bianca Kaylene Ruiz, in pro. per., for Appellant.

Maroot, Hardcastle & Jolly and Wayne Hardcastle for Respondent.

-ooOoo-

Bianca Kaylene Ruiz and Jacob Ruiz are embroiled in an ongoing marriage dissolution.  This appeal concerns two orders.  First, the court denied Bianca's request for attorney fees.  Second, Jacob requested the court to credit certain car payments against his previously-ordered child and spousal support obligations.  The court granted the

request because the car, which is in Bianca's possession, benefitted Bianca and the children, who are in Bianca's sole physical custody.[1]

Prior to entry of these two orders, Bianca filed for bankruptcy. As she did in the trial court, she now argues the court lacked jurisdiction to award car payment credits to Jacob. She also claims the credits are not allowed by law, insofar as they apply against Jacob's child support obligation.

Last, Bianca contends the court abused its discretion in denying the requested attorney fees. We disagree with each contention and affirm both orders.

## BACKGROUND

This appeal concerns orders from hearings on two dates: December 7, 2021, and February 10, 2022. The orders concern child support and attorney fees. Prior to these hearings, the court originally had ordered Jacob to pay $1,690 in monthly child support, $200 in monthly spousal support, $3,780 in arrearages, and $2,000 in attorney fees.[2]

History Relevant to December 7, 2021 Hearing

Jacob filed a request "that [Bianca] make the payments on the vehicle that she drives," totaling $506.85 monthly. At the time, Jacob was regularly paying for the vehicle. Bianca filed a "responsive declaration" to Jacob's request and instead herself requested, among other things, needs-based attorney fees. Specifically, Bianca stated she did "not have the funds required to pay [her attorney] to continue representing" her and needed "approximately $4,000" or her attorney would withdraw from the case.

In a reply declaration,[3] Jacob "ask[ed] that [he] be allowed to make [the car] payment directly and to deduct the amount of the payment … from child and spousal

---

[1] Bianca and Jacob have two children together. The children were born in 2009 and 2011.

[2] This attorney fee award is not at issue.

[3] The record is somewhat unclear as to what exactly the declaration was in reply.

support otherwise payable in this matter." Meanwhile, Bianca elsewhere filed for bankruptcy and filed in this case a "notice of stay of proceedings ...."

December 7, 2021 Hearing

On December 7, 2021, at the outset of the hearing, Bianca's attorney moved to withdraw from the case. The court granted the request and then turned its attention to Bianca's request for attorney fees.

In ruling on Bianca's request, the following colloquy occurred:

> "[THE COURT]: So what that calculation is telling me is that after the payment of support, that [Jacob's] available spendable income after support is $3,149.00 per month and that [Bianca's] is $4,684.00 a month meaning that of the pie of available funds after support is paid, he has 40.2 percent and [she has] 59.8 percent.
>
> [¶] … [¶]
>
> "[THE COURT]: So given that distribution of funds, it's -- it's -- there is not a significant inequity here of income. It was equalized in large part by the orders that have been made. Now part of that, in fairness, a significant amount of it is child support and I don't want to take that into account entirely.
>
> "[BIANCA]: Yeah. I read that in -- you are not supposed to take into account as income the child support that is received in the case that we are in.
>
> "THE COURT: I understand and I'm not taking it into account as income for purposes of calculating spousal support for example. [¶] But when you are asking me to determine attorney's fees, I'm looking at the availability of funds all together. I can take into account, you know, any funds and any availability of resources because I need to find a resource. If you are asking me to order him to pay you fees, I have to make two findings. 1) -- really three findings. 1) that you have a need for fees and I think you have a need for fees. 2) that you don't have the ability to pay your own fees. And then 3) is that he has the ability to pay your fees. And I don't know that in this case that I can make all of those findings

3.

because in looking at the numbers as I see them, he is only left with $3,149.00 at the end of the month and you are left with $4,684.00 a month and you are cohabitating with somebody who is paying a portion of your fees. And I know --

"[BIANCA]: No.

"THE COURT: -- your expenses and I know you submitted a declaration when you tried to itemize to me what expenses he is paying and what he is not."[4]

After more discussion, the court began "trying to find assets to liquidate" but found none.

Ultimately, the court concluded,

"I'm just not able to make a finding here that, in all practicality, that [Jacob] has a source of funds to pay attorney's fees or that there is such an inequitable state here of your respective financial circumstances that it would warrant him. His income and expense declaration reveals that he has $5,400.00 in monthly expenses. I know you dispute some of those, but that is what he claims to include, but that does include his child and spousal support as well. So actually -- and then his -- as well as the payment towards your attorney's fees, Ms. Ruiz. And then his -- his -- his total income before taxes is about $6,300.00 a month. And if I look at that dissomaster calculation again, his availability after support is $3,149.00. If I back out the support from his calculations here. 5453 minus 1920. He's got $3,500.00 in monthly expenses and -- and only $3,150.00 to pay it. So I just can't … find that there is a source here."[5]

Finally, it stated,

"[W]e are going to have to set this for a long-cause hearing. I'm not going to order attorney's fees at this time based on the evidence that's before me. We can set it for a hearing

---

[4] The cohabitation presumption (Fam. Code, § 4323) is still pending resolution in the trial court.

[5] "DissoMaster is a computer software program widely used by courts to set child support and temporary spousal support." (*Namikas v. Miller* (2014) 225 Cal.App.4th 1574, 1578, fn. 4.)

where we can go through these documents a little bit more closely. We can spend an awful lot of time and effort on these things. If you want to find a way to get an attorney, you can have one. If you can't, we are not going to -- you are not going to. As best I can tell from his income and expense declaration, [Jacob] borrowed money in order to pay for his attorney, so you can chose [*sic*] to do that if you want to. You don't have to. And -- but -- but I can't order attorney's fees to be paid based on the circumstances that exist as I know them to be at least as of today with the evidence that I have."

The court then shifted focus to the car payment issue.

Because Bianca was in "exclusive possession" of the vehicle but could not afford to make payments on it, the court ordered Jacob "to pay the debt" and "to receive a dollar for dollar credit towards the support obligation for making those payments." The literal order reads, effective December 1, 2021, Jacob shall "pay the debt in his name that is associated with the [vehicle] that is in [Bianca's] possession. [Jacob] shall receive a dollar for dollar credit towards his child and spousal support obligation."

Pertinent Filings Between December 7, 2021, and February 10, 2022

A few days after the December 7, 2021, hearing, Bianca filed a "motion for reconsideration of prior order[.]" Her motion was based on the fact the court declined to consider Jacob's retirement account and a "second vehicle" when it denied attorney fees. Bianca then filed a second "motion for reconsideration" relative to the "child support offset[.]" This motion, in essence, claimed the court was not authorized to order the child support offset. She subsequently filed another request for attorney fees to retain new counsel.

Bianca also filed a "notice of violation of bankruptcy stay[.]" The notice claimed the court lacked jurisdiction to order "a setoff of debt against support obligations."

February 10, 2022 Hearing

At the February 10, 2022, hearing, the court again considered the car payment credit and attorney fees. But at the outset, it lamented the fact Bianca was "turning this

5.

[case] into a very substantial matter which … demonstrate[s] … that [she] really [doesn't] have the proper focus … on economies of litigation and really [is] not focused on the best interest of the children ….”

The court then began by addressing Bianca's argument the court lacked jurisdiction to issue the car payment order because she had filed for bankruptcy. During a lengthy discussion, the court stated, “I made a determination that the vehicle [Bianca is] driving which everybody has agreed [she] can have temporary possession of, for [her] benefit and for the child's [*sic*] benefits, benefits [her] lifestyle, benefits the child's [*sic*] lifestyle.” The court concluded, “[T]his is the venue where child support is decided. Not bankruptcy court. My child support order is going to be that if [Jacob] is going to pay the support to you in the form of satisfying the debt that allows you to drive your vehicle then he's going to get a credit towards his child support obligation for that purpose.”

The hearing moved on to attorney fees with Bianca first withdrawing her request to reconsider the December 7, 2021, ruling. The parties instead focused on her new request for attorney fees. The court began by noting,

> “In order for me to make an order for attorney's fees under [Family Code section] 2030 I have to find there's a need for attorney's fees. And I do find that there's a need. I have to find that there's an inequity in income and there is an income inequity between the parties. [Jacob] earns substantially more than [Bianca] earns. Maybe not substantially more than her earning capacity. But we haven't established that until we have a trial. I thirdly have to determine that [Jacob] has the capacity to pay attorney's fees. That there's some source of funds from which I can say, ‘Okay, here pay her attorney's fees.’ *That's where we got caught up last time*.”[6] (Emphasis added.)

---

[6] Undesignated statutory references are to the Family Code.

It then inquired into "a community vehicle" in Jacob's possession. But Bianca claimed the court could not order its liquidation due to the pending bankruptcy. Bianca insisted Jacob's retirement account was the only source for attorney fees.

The court observed the retirement account was not "exempt" from bankruptcy until the "[t]he bankruptcy court … make[s] that determination at some point in time." Ultimately, it opined,

> "[I]t feels like … this account is still part of the bankruptcy estate regardless of whether or not [Bianca] claimed it exempt. Until I have an order from the bankruptcy Court stating that it's exempt I really can't make an order to allow me to access those funds[.]"

It subsequently denied the attorney fees "request without prejudice" and expressed a willingness to "revisit the issue" if Bianca obtained an order from the bankruptcy court stating the retirement account was exempt.

Finally, the court noted, "I think there should be some soul searching here as to whether or not [Jacob's] willing to find a way to get [Bianca] some attorney's fees, $3,000 or so so she can get an attorney to finish up this case" because "[t]he issues are not that complicated and the value of the issues aren't that substantial."[7]

## DISCUSSION

### I. The Court Did Not Lack Jurisdiction to Modify Support Orders

First, Bianca argues "the trial court's offset order is void because it lacked jurisdiction over core proceedings of bankruptcy." She is mistaken.

---

[7] On this point, the court agreed with Jacob's counsel's characterization: "[W]e thought this was a relatively easy case. It's a nine year marriage. Custody was resolved in Utah. Visitation was resolved in Utah. We have a military retirement [Bianca's] going to be entitled to receive one half of the portion earned during the marriage. We have a [Thrift Savings Plan] account that existed. We have the two vehicles that are subject to debt and now subject to the bankruptcy …."

"Under the Bankruptcy Code, the filing of a bankruptcy petition has certain immediate consequences. For one thing, a petition 'creates an estate' that, with some exceptions, comprises 'all legal or equitable interests of the debtor in property as of the commencement of the case.' " (*City of Chicago, Illinois v. Fulton* (2021) 141 S.Ct. 585, 589.) "A second automatic consequence of the filing of a bankruptcy petition is that, with certain exceptions, the petition 'operates as a stay, applicable to all entities,' of efforts to collect from the debtor outside of the bankruptcy forum. [Citation.] The automatic stay serves the debtor's interests by protecting the estate from dismemberment, and it also benefits creditors as a group by preventing individual creditors from pursuing their own interests to the detriment of the others." (*Ibid.*) "Judicial proceedings in violation of the automatic stay are void." (*Sindler v. Brennan* (2003) 105 Cal.App.4th 1350, 1353.)

One notable and pertinent exception to the automatic stay is for orders relating to "domestic support obligations …." (11 U.S.C. § 362, subd. (b)(2)(A)(ii).) As relevant, domestic support obligation "means a debt that accrues … that is" "owed to or recoverable by" "a spouse, former spouse, or child of the debtor or such child's parent," "in the nature of alimony, maintenance, or support … of such spouse, former spouse, or child of the debtor or such child's parent," "established or subject to establishment … by reason of applicable provisions of" "an order of a court of record," and "not assigned to a nongovernmental entity …." (11 U.S.C. § 101(14A).)

We have no doubt the court's order crediting Jacob for car payments is a domestic support obligation. In arguing otherwise, Bianca principally relies on *In re Taylor* (10th Cir. 2013) 737 F.3d 670 (*Taylor*). Her reliance is misplaced.

Bianca reads *Taylor, supra,* and 11 U.S.C. section 101(14A) to mean a "a debt must be in the nature of support to the 'spouse of the debtor' " to qualify as a domestic support obligation. Her reading entirely ignores the fact a domestic support obligation is also defined to include debts "owed to or recoverable by" "a … child of the debtor or

such child's parent" and "in the nature of alimony, maintenance, or support of such …
child of the debtor or such child's parent …." (11 U.S.C. § 101(14A).)

Jacob's court ordered support payments are a "debt" owed to children of the
debtor and such children's parent, i.e., Bianca and her children. Those support payments
are literally support payments, i.e., in the nature of alimony, maintenance, and support.
Accordingly, the court did not lack jurisdiction to modify the support orders.

## II.  The Court Properly Modified Support

The next question is whether the court erred in modifying the support order by
crediting Jacob's car payments against both the child and spousal support orders. Bianca
claims "California law prohibits the offset of debt against support obligations."

Jacob responds "California courts have long held that spousal and child support
payments can include Court ordered mortgage payments and/or vehicle payments where
the supported spouse has the use of the asset in question." We find the court did not err
by ordering Jacob to pay for the vehicle at issue and crediting him for future payments.[8]

"Child support awards are generally reviewed for abuse of discretion." (*S.C. v.
G.S.* (2019) 38 Cal.App.5th 591, 598 (*S.C.*).) The trial court may not, however,
" ' "ignore or contravene the purposes of the law regarding … child support." ' " (*Ibid.*)

"Under section 290, the trial court has 'broad' discretion to fashion orders
enforcing family law judgments." (*S.C., supra,* 38 Cal.App.5th at p. 600.) For example,
"a trial court may 'determine a parent has satisfied his or her support obligation in a
manner other than direct financial payments' [citation] or credit the surplus to arrears
'where a parent has made payments beyond those ordered,' " but  it " 'has no discretion
to absolve an obligor of support arrearages, or interest thereon.' " (*Ibid.*; *Keith G. v.
Suzanne H*. (1998) 62 Cal.App.4th 853, 858-859.) Under section 2023, subdivision (a),

---

[8] The court did not retroactively credit prior payments made by Jacob. Retroactive
modification is limited by statute. (See, e.g., §§ 3603, 3651, 3653.)

where the "payment of an obligation of a party would benefit either party or a child for whom support may be ordered, the court may order one of the parties to pay the obligation, or a portion thereof, directly to the creditor."

We discern no abuse of discretion in this case. The trial court expressly determined the vehicle benefitted both Bianca and the children. It then ordered Jacob to continue paying for the vehicle and credited those payments towards his child and spousal support obligations. Contrary to Bianca's contention, this is well within the court's power. (*S.C., supra,* 38 Cal.App.5th at p. 600; § 290; § 2023.)

In arguing otherwise, Bianca cites *Keck v. Keck* (1933) 219 Cal. 316 (*Keck*), *In re Marriage of Comer* (1996) 14 Cal.4th 504 (*Comer*), and *Williams v. Williams* (1970) 8 Cal.App.3d 636 (*Williams*). We address each in turn.

In *Keck*, our Supreme Court stated, "A subsequent order which relieves the husband from paying accrued alimony in cash as ordered, and discharges said alimony by offsetting it against an indebtedness of the wife to the husband existing at the time of entry of the divorce decree, is a modification as to past due installments, just as is an order requiring the wife to accept in full settlement of accrued alimony less than the full amount due." (*Keck, supra,* 219 Cal. at p. 321.) Because the order "attempted to modify the alimony orders as to accrued installments, [it was] contrary to law." (*Ibid.*)

But the court's order in this case applied prospectively only. Indeed, *Keck* also noted "that where a liberal support allowance suitable to the circumstances and financial condition of the parties is made, the court should have the right in a proper case to provide as a part of the decree that the husband may withhold a portion of the allowance each month in payment of his wife's indebtedness to him." (*Keck, supra,* 219 Cal. at p. 320.)

In *Comer*, our Supreme Court recognized "[i]t is well settled that a child support obligation '… runs to the child and not the parent.' " (*Comer, supra,* 14 Cal.4th at p. 517.) We see no reason this recognition limits a trial court's ability to determine

10.

whether a car payment suffices as child support.  It is also well settled "a trial court may 'determine a parent has satisfied his or her support obligation in a manner other than direct financial payments ….' " (*S.C., supra,* 38 Cal.App.5th at p. 600.)

Finally, in *Williams,* the husband paid off debt associated with "a community property apartment house …." (*Williams, supra,* 8 Cal.App.3d at p. 638.)  The debt had also encumbered the wife.  (*Ibid.*)  Because the husband paid the debt, he "made none of the support payments provided for in the divorce decree."  (*Ibid.*)

The husband then sought to "set off" the debt payment "against … support arrearages."  (*Williams, supra,* 8 Cal.App.3d at pp. 638-639.)  The Court of Appeal "observe[d] that it is well settled in this state that there can be no such offset" because it would amount to "retroactive alteration of marital payments or debts accrued and due …."  (*Id.* at p. 639.)  The court extended the rationale to child support arrearages. (*Ibid.*)

This case does not involve a retroactive order let alone arrearages.  The authorities cited by Bianca are unpersuasive.  In sum, we find a court has ample discretion to prospectively order a credit for indirect payments benefiting a spouse and child.  The trial court did not violate that discretion in this case.[9]

## III.  The Court Properly Denied Attorney Fees[10]

Last, we address attorney fees.  Bianca argues "the trial court failed to exercise its discretion when it denied … needs-based attorney's fees[.]"  Specifically, she asserts the

---

[9] Alternatively, Bianca suggests the court departed from guideline support.  We disagree.  As the trial court stated, Bianca still received "the benefit of every penny of the support that was ordered."  Importantly, the car payment credit does not reduce the total child support obligation to a nullity.

[10] Bianca filed a supplemental brief after this court recently published *In re Marriage of Knox* (2022) 83 Cal.App.5th 15.  In *Knox*, this court cautioned "courts, commentators, and practitioners" to avoid "relying on statements about discretion set forth in pre-2011 case law, such as cases that identify abuse of discretion as the sole standard of review."  (*Id.* at p. 25.)  It also reiterated "[i]ssues of statutory interpretation

court ruled "before reviewing the relevant evidence," "failed to consider relevant section 4320 factors," refused to consider Jacob's retirement account as a source "available for an attorney's fee award," "erred by considering [her] support award as income for attorney's fees," and "erred by assuming [her] boyfriend has paid any of her attorney fees or that his income is available for such,"  We find no reversible error.

"California's public policy in favor of expeditious and final resolution of marital dissolution actions is best accomplished by providing at the outset of litigation, consistent with the financial circumstances of the parties, parity between spouses in their ability to obtain effective legal representation.  'A motion for attorney fees and costs in a dissolution action is addressed to the sound discretion of the family court.'  [Citation.] ' "[A] ruling otherwise within the trial court's power will nonetheless be set aside where it appears from the record that in issuing the ruling the court failed to exercise the discretion vested in it by law." ' "  (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1312 (*Tharp*).)

Section 2030 " 'permits the trial court to order payment of attorney fees and costs as between the parties based upon their "ability to pay" and their "respective incomes and needs" in order to "ensure that each party has access to legal representation to preserve all of the party's rights." '  [Citation.]  '[T]he purpose of section 2030 is *not* the redistribution of money from the greater income party to the lesser income party.  Its purpose is *parity*: a fair hearing with two sides equally represented.  The idea is that both sides should have the opportunity to retain counsel, not just … the party with greater financial strength.' "  (*In re Marriage of Nakamoto & Hsu* (2022) 79 Cal.App.5th 457, 468-469 (*Nakamoto*).)

---

are questions of law subject to de novo review on appeal." (*Ibid.*)  We are both mindful of these points and Bianca's supplemental arguments.

"A court may award fees under section 2030 ' "where the making of the [fee] award, and the amount of the award, are just and reasonable under relative circumstances of the respective parties." ' [Citation.] 'In determining what is just and reasonable, "the court shall take into consideration the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately …." [Citation.] In addition to the parties' financial resources, the court may consider the parties' trial tactics.' [Citation.] 'The court should limit an award to fees that were reasonably necessary, including by taking into account overlitigation.' [Citation.] '[S]ervices which have no apparent effect other than to prolong and to complicate domestic litigation cannot be deemed "reasonably necessary" [citation] "to properly litigate the controversy" [citation] and may properly be disregarded by a trial court determining whether and in what amount to order one party to contribute to the cost of the other's representation.' " (*Nakamoto, supra,* 79 Cal.App.5th at p. 469.) A ruling on an award for attorney fees "should be the product of a nuanced process in which the trial court should try to get the 'big picture' of the case …." (*Alan S. v. Superior Court* (2009) 172 Cal.App.4th 238, 254.)

"In determining what is just and reasonable under the relative circumstances, the court shall take into consideration the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately, taking into consideration, to the extent relevant, the circumstances of the respective parties described in Section 4320." (§ 2032, subd. (b).) "When considering an application for attorney fees, the trial court must comply with the mandatory provisions of [sections 2030 and 2032] because discretionary authority 'must be exercised within the confines of the applicable legal principles.' " (*In re Marriage of Morton* (2018) 27 Cal.App.5th 1025, 1050.)

" '[T]he record must reflect that the trial court actually … considered the statutory factors in exercising that discretion.' " (*In re Marriage of Cheriton* (2001)

13.

92 Cal.App.4th 269, 315.)  Bianca "bears the burden of showing the court abused its discretion by failing to award her any attorney fees." (*Kevin Q. v. Lauren W.* (2011) 195 Cal.App.4th 633, 644 (*Kevin Q.*).)

### A.  Reviewing Relevant Evidence

As noted, Bianca claims the court failed to review relevant evidence.  A court's failure to review evidence often is "sufficient grounds, by itself, to reverse [its] decision." (*Tharp, supra,* 188 Cal.App.4th at p. 1314.)  But our review of the record here does not disclose a failure to review evidence.[11]

### B.  Section 4320

Bianca suggests the "[t]he record does not reveal the court's reason for failing to consider [the section 4320] mandatory factors."  We find no error.

### i.  Additional Background

During the February 10, 2022, hearing, Bianca asked the court about section 4320:

> "[BIANCA]: I was also asking about the 4320 factors that have to be stated for the record for attorney's fees.  We didn't go through all of those.
>
> "THE COURT: We'll go through that at the time of trial.
>
> "[BIANCA]: No but that's for attorney's fees.  Hold on a second.  Sorry about that.  Yes.  So uhm --

---

[11] Notably, the court did say, "I'm not going to sit here today and have you guys go through financial records on the record."  But this does not mean the court itself did not review those records.  (See *Kevin Q., supra,* 195 Cal.App.4th at p. 644 [appellant bears burden of proving trial court erred].)

The court also said, "I want to make some points known based on my reading and, again, *it was a lot of reading.*  I obviously didn't review every job listing and every response to each job listing and all of that, but I have a gist of what this is about and what both sides are trying to communicate to me." (Emphasis added.)  We do not discern reversible error in this statement.  (See *Gutierrez v. G & M Oil Co., Inc.* (2010) 184 Cal.App.4th 551, 566.)

"THE COURT: There's not a requirement that I go -- there's not a requirement that I recite for you each of the Family Code Section 4320 factors right now. I have already told you what I considered in making the order. I have made -- I considered what your income is, what your earning capacity may be, something we'll address at trial. I considered [Jacob's] income, what he has available to him to pay for fees. This issue is not about whether or not you're healthy, whether or not there's tax consequences, the issue is whether there are any funds I can have [Jacob] draw from in order to pay you attorney's fees."

### ii. Analysis

Section 4320 does not "require the court to address each factor expressly." (*In re Marriage of Diamond* (2021) 72 Cal.App.5th 595, 602 (*Diamond*).) Instead, the court must " ' "fairly exercise the weighing process contemplated by section 4320, with the goal of accomplishing substantial justice for the parties in the case before it." ' " (*Ibid.*)

We find the standard satisfied in this case. The court's comments demonstrate it was acutely aware of section 4320 and considered the relevant factors. For example, two factors recited—health and taxes—appear directly in section 4320. (§ 4320, subds. (h) & (j).) Accordingly, there is no error. (*Elena S. v. Kroutik* (2016) 247 Cal.App.4th 570, 575 [absent contrary evidence, judicial duties are presumed performed]; Evid. Code, § 664.)

We reiterate that "[t]rial courts may consider it better practice to make findings as to each section 4320 factor in writing or on the record. Express findings likely will provide a more complete record on appeal and advise the parties that the statute has been followed. The failure to make express findings may also become relevant when a judgment 'provides no insight into how the court weighed the statutory factors,' raising the question 'whether the court in fact weighed or even gave due consideration to the statutory factors.' " (*Diamond, supra,* 72 Cal.App.5th at pp. 603-604, fn. omitted.) But "[t]hat did not happen here." (*Id.* at p. 604.)

### C. Thrift Savings Plan

Next, Bianca claims the court erred by refusing to consider the Thrift Savings Plan "as available for an attorney's fee award." We find no error.

It is true the Bankruptcy Code "entitles" debtors to exclude from the bankruptcy estate certain property including inalienable retirement plans. (*Patterson v. Shumate* (1992) 504 U.S. 753, 757-758.) Indeed, a bankruptcy court has no discretion to deny a validly claimed exemption. (*Law v. Siegel* (2014) 571 U.S. 415, 423-424 ["it is the debtor in whom the [law] vests discretion," "not the court"].)

The problem here is the only evidence in the record regarding bankruptcy was a single page document indicating a bankruptcy case was filed on November 10, 2021. No further information is provided.

The trial court correctly desired "an order from the bankruptcy Court stating [the Thrift Savings Plan was] exempt" *before* ordering a disbursement for attorney fees. Such a ruling is not only prudent but necessary to clarify jurisdiction. Finally, the court justly indicated a willingness to "revisit the issue" if Bianca provided the necessary evidence.[12] We decline to find an abuse of discretion on this record.

### D. Support Income

Bianca understandably took objection to the fact the court stated a "significant amount" of her income was "child support …." But her objection was slightly misplaced.

We agree, of course, a party "should not have to utilize support payments designed to pay living expenses to fund litigation in the dissolution proceeding." (*Tharp, supra,* 188 Cal.App.4th at pp. 1315-1316; *In re Marriage of Hatch* (1985) 169 Cal.App.3d 1213, 1220.) But we do not interpret the court's comments to mean child or spousal support was a source for Bianca to retain a lawyer.

---

[12] Bianca places much attention on the Code of Federal Regulations governing Thrift Savings Plans. (See 5 C.F.R. §§ 1650-1690.15.) But these regulations deal solely with administrating plans on a day-to-day basis, not bankruptcy. In other words, they are irrelevant to whether an *actual* exemption exists in a specific bankruptcy case.

The court instead considered the support payments as they related to a monetary inequity between the parties. The record clearly indicates the court believed Bianca needed money to afford an attorney.

The court denied her request, however, solely because it could not find "some source of funds from which" it could order Jacob to pay. The court made clear this was the reason it denied Bianca's requests for attorney fees at *both* hearings.[13] It also looked for other property to liquidate but was unable to accommodate Bianca's need. We again find no abuse of discretion.

### E. Reference to Reliance On Boyfriend

Finally, Bianca contends the court erred by assuming Bianca's boyfriend provided her income or could help her afford a lawyer. She insists "there is not one piece of evidence to support this finding."

To the extent the court meant what it said—that Bianca's boyfriend could help her retain counsel—we agree it is speculation unsupported by the record.[14] But this speculation is not prejudicial.

The court did not deny Bianca attorney fees because she could afford a lawyer. It denied her attorney fees because Jacob could not afford to pay. (See **III., D.,** *ante*.) Whether Bianca's boyfriend could or could not assist in retaining a lawyer is irrelevant to

---

[13] On December 7, 2021, the court found there was no source of funds from which Jacob could afford to pay attorney fees. On February 10, 2022, the court stated, "I … have to determine that [Jacob] has the capacity to pay attorney's fees. That there's some source of funds from which I can say, 'Okay, here pay her attorney's fees.' *That's where we got caught up last time*." (Emphasis added.) It later formally denied the request.

[14] The court, speaking directly to Bianca, opined, "[Y]ou have a boyfriend you cohabitate with, sometimes there is -- there is, you know, they want things to work out for you as well and sometimes that's a place that funds can come from." Elsewhere, it stated Bianca was "cohabitating with somebody who is paying a portion of [her] fees." It is reasonably possible the court meant Bianca's boyfriend was helping with living expenses, not literal attorney fees. Considered in context, however, the most reasonable interpretation is the one Bianca advances.

the court's actual holding.  Accordingly, we will not disturb the order denying attorney fees.[15]  (*In re Marriage of Steiner & Hosseini* (2004) 117 Cal.App.4th 519, 526 [error reversible only if it results in a " 'miscarriage of justice.' "].)

## **DISPOSITION**[16]

The December 7, 2021, and February 10, 2022, orders are affirmed.

Bianca's motion to strike is denied.  (Cal. Rules of Court, rule 8.204(e)(2)(C).)

SNAUFFER, J.

WE CONCUR:

POOCHIGIAN, Acting P. J.

FRANSON, J.

---

**15** Bianca separately claims "the court failed to award [her] reasonable attorney fees before moving forward with proceedings."  We do not view this as a distinct claim—it simply encapsulates her entire argument which we have found meritless.

**16** Bianca filed a motion to strike portions of Jacob's brief.  We immediately address the motion in the disposition.