Filed 12/21/23  Vlaovic v. Vlaovic CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| STEVAN VLAOVIC,<br><br>        Appellant,<br><br>v.<br><br>KRISTINA D. VLAOVIC,<br><br>        Respondent. | A165784<br><br>(San Mateo County<br>Super. Ct. No. 16FAM01503) |

Plaintiff and appellant Stevan Vlaovic (appellant) appeals from the trial court's denial of his request to modify child support to defendant and respondent Kristina D. Vlaovic (respondent).  Because the court properly concluded it lacked authority to modify the support award, we affirm.

In the present case, a Judgment of Dissolution was filed in 2020 with an attached Marital Settlement Agreement (MSA).  Among other things, the MSA provided that neither party owed spousal support; that the parties would share custody of their twin boys; and that child support was payable annually and calculated in the following year.  The MSA provided: "Neither Party shall pay child support to the other on a monthly basis, but they shall complete an annual true-up to determine if any child support is owed by one party to the other for the prior year.  By March 1st of each year, the parties shall exchange income information, including year-end paystubs, W-2s,

1

1099s, and other documents evidencing income and itemized deductions used for calculating guideline child support. . . . The amount of any child support owed by one party to the other shall then be calculated and any child support due and owing shall be paid in full on or before April 30th. . . ." As the MSA makes clear, the amount of support to be paid on or before April 30 is support due for the prior year and is based on income earned by the parties in the prior year.

Importantly, the MSA expressly addresses how and when stock options granted by an employer are counted as income for child support purposes. The MSA states, "In the case of stock options, the party who has received such option shall have income for the purposes of child support at the following two points. First, income is available for support when the option vests and once any legal restrictions on the exercise and/or sale of the options are removed, at which point the income available for support shall be calculated as the delta between the fair market value and the strike price to exercise the options. The fair market value shall be equal to the price at the close of the day on which the options are exercisable (this may be the day the options vest or the day on which restrictions on the exercise of the options are lifted). Thereafter, there shall be income available for support when the stock is sold, at which point the income shall be calculated as the delta between the sales price and the higher of the strike price or the price used to calculate support at the time of vest or lifting of any restrictions on exercise."

On December 29, 2021, appellant filed a request for modification of 2021 child support (Request). In a declaration, he averred he had a one-time, dramatic increase in income in 2021. In particular, his 2021 income increased from $931,892 in 2020 to over $21 million due to the sale of stock granted by a former employer. Appellant requested that the court find that

an award under the MSA for 2021 would "exceed the needs of the children" and that his child support for the year should be capped at 50% of $13,688 per month (or $6,844 per month, due to the shared custody). Appellant submitted an expert declaration estimating 2021 child support under the MSA would be $104,985 per month (calculated based on respondent's 2020 earnings).

Appellant served the Request on respondent on January 3, 2022. Respondent argued appellant's Request constituted a prohibited request for retroactive modification of child support. At the hearing on the Request, the parties stipulated that, "The agreement of the parties was they would run a calculation in 2022 after they exchanged their information for 2021. Until April 30, 2022, it was impossible for them to know how much child support was owing for 2021." At the conclusion of the hearing and in a subsequent written order, the trial court denied the Request, concluding it did not have "jurisdiction" to modify support before January 3, 2022—the date of service of the Request on respondent. The written order explained, "the child support obligation accrued on the date the income was earned and . . . it was just subject to a true-up following the end of the year to determine how much each party owed to each other, but the amount was owed . . . on the date the income was earned." The present appeal followed.

Subject to certain limitations, "a support order may be modified or terminated at any time as the court determines to be necessary." (Fam. Code, § 3651.)[1] As relevant in the present case, "a support order may not be modified or terminated as to an amount that accrued before the date of the filing of the notice of motion or order to show cause to modify or terminate."

---

[1] All undesignated statutory references are to the Family Code.

(§ 3651, subd. (c)(1);[2] see also *S.C. v. G.S.* (2019) 38 Cal.App.5th 591, 598–599 [" ' "[t]he Legislature has established a bright-line rule that accrued child support vests and may not be adjusted up or down.  [Citations.]  If a parent feels the amount ordered is too high—or too low—he or she must seek prospective modification." ' "]; § 3692 ["a support order may not be set aside simply because the court finds that it was inequitable when made, *nor simply because subsequent circumstances caused the support ordered to become excessive or inadequate*" (italics added)].)  On appeal, appellant contends the trial court erred because, under the MSA, the 2021 child support did not *accrue* until the support was actually due later in 2022.

Both parties acknowledge the relevant definition of the term "accrue" is found in the decision in *Hangen v. Hangen* (1966) 241 Cal.App.2d 11 (*Hangen*).  That case involved an appeal from an order that reduced monthly spousal and child support payments.  (*Id.* at p. 11.)  Although the case was decided before the enactment of the Family Code and section 3651, it involved parallel language in former Civil Code section 137.2, providing that a support order "may be modified or revoked at any time during the pendency of the action except as to any amount that may have accrued prior to the order of modification or revocation."  (See § 2 ["A provision of this code, insofar as it is substantially the same as a previously existing provision relating to the same subject matter, shall be considered as a restatement and continuation thereof and not as a new enactment"]; see also *In re Marriage of*

_____

[2] In his opening brief, appellant mistakenly cites to similar language in section 3603, which applies to support orders during the pendency of dissolution proceedings.  Respondent also argues section 3653 and section 666(a)(9) of title 42 of the United States Code prohibited the Request.  Because we conclude the Request was a prohibited retroactive request for modification of support under section 3651, we need not consider those additional statutes.

4

*Fellows* (2006) 39 Cal.4th 179, 186.) The *Hangen* court observed that "the word 'accrue' means 'To come into existence as an enforceable claim; to vest as a right.' " (*Hangen*, at p. 14.) The court further observed that, under the support order at issue in the case, the support was " 'payable' " on the first day of each month, which meant that the "monthly support payments accrued on the first of each month." (*Id.* at pp. 13–14.) The lower court had erred in reducing support retroactive to the start of the month the order was made. (*Id.* at p. 14.)

Appellant argues that, under the reasoning of *Hangen*, no 2021 support amount had accrued by the time appellant filed and served the Request, because no amount was due until months later under the terms of the MSA. However, as respondent points out, appellant disregards the second part of the definition of "accrue" in *Hangen*: " 'to vest as a right.' " (*Hangen*, *supra*, 241 Cal.App.2d at p. 14.)[3] As explained by the Supreme Court in *In re Marriage of Skaden* (1977) 19 Cal.3d 679, 685, "a 'vested' right may be either 'matured' or 'immature.' If payment is subject to one or more conditions . . . the right is said to be 'vested' but 'immature.' If on the other hand it is subject to no conditions and constitutes an 'unconditional right to immediate

---

[3] Appellant points out that, for its definition of "accrue," *Hangen* cited both a dictionary and a prior decision that cited a longer version of the same dictionary definition. In particular, in *Leahey v. Department of Water & Power* (1946) 76 Cal.App.2d 281, the court stated, "The term 'accrue' means: 'To come into existence as an enforceable claim; to vest as a right; as, a cause of action has *accrued* when the right to sue has become vested.' " (*Id.* at p. 286.) Appellant points out that the third clause included in *Leahey* contemplates an immediately enforceable right. However, it appears that third clause is just an example of the use of the word "accrued," rather than a narrowing of the definition. In any event, *Hangen* did not choose to include the third clause in defining "accrue" in the context of modification of support.

5

payment,' it is said to be 'matured.' " Interpreting the child support provision of the MSA in light of *Hangen* and *Skaden,* we affirm.

Under the express language of the MSA, each party "shall have [stock option] income for the purposes of child support" at two points in time. First, the "income is available for support when the option vests" and there are no restrictions on sale of stock. And, second, "there shall be income available for support when the stock is sold." Both of those events occurred in 2021, and, under the MSA, appellant had income available for support when the stocks first vested and whenever shares of stock were sold. Thus, under the MSA, respondent had a vested right to support based on the income from appellant's stock options when the options vested and when the stocks were sold. Each such event occurred soon after the execution of the MSA in December 2020.[4] And each event occurred before the filing of the Request on December 29, 2021.[5] The inclusion of such express provisions regarding stock options in the MSA demonstrates unambiguously that the parties intended that the full value of any options that vested in 2021 would be available in the calculation of 2021 support. At the time of the drafting of the MSA, *Hangen* was the leading authority on the meaning of "accrue," and appellant and respondent both currently acknowledge it as such. Thus, during the drafting process, the parties should have been aware that the MSA accorded

---

[4] The first sale of vested stock by appellant occurred about two months after the execution of the MSA.

[5] Respondent argues that, in the alternative, appellant's "support obligation vested on December 31, 2021 when all the variables needed to determine the amount were fixed." Because the trial court properly concluded respondent's right to support vested at earlier points in 2021 under the express language of the MSA, we do not address respondent's alternative argument.

6

vested rights that would affect the timing of requests for modification of support.

In his briefing on appeal, appellant makes no substantial rebuttal to these points. He argues the Legislature referred to "accrued" support rather than "vested" support, but *Hangen* defined "accrued" support to include vested rights. (*Hangen*, *supra*, 241 Cal.App.2d at p. 14.) When the Legislature enacted section 3651 it made no attempt to narrow the definition adopted in *Hangen*. In these circumstances, we may rely on the proposition that " ' "[t]here is a strong presumption that when the Legislature reenacts a statute which has been judicially construed it adopts the construction placed on the statute by the courts." ' [Citation.] That is because, ' "[w]hen the Legislature amends a statute without changing those portions . . . that have previously been construed by the courts, the Legislature is presumed to have known of and to have acquiesced in the previous judicial construction." ' [Citation.]" (*Sharon S. v. Superior Court* (2003) 31 Cal.4th 417, 433–434; accord *Ixchel Pharma, LLC v. Biogen, Inc.* (2020) 9 Cal.5th 1130, 1151.) Furthermore, appellant identifies no reason why respondent did not have a vested right to child support based on appellant's income from his stock options when the income became "available for support" as defined by the MSA. In particular, he identifies no reason why respondent's vested right to child support under the MSA turned on a calculation of the precise amount due. At most, appellant argues only that respondent's right to support was "immature," because the payment obligation depended on satisfaction of a condition—the "true-up" process described in the MSA.[6]

---

[6] We agree with appellant's observation that interest on the 2021 support did not start to accumulate until after the support became due, but appellant cites no authority that interest must begin to run on support in order to consider the support accrued.

7

We conclude appellant seeks to retroactively modify support. In *Hangen*, the support payment became payable (mature) and vested on the same date—the first day of the month. (*Hangen*, *supra*, 241 Cal.App.2d at pp. 13–14.) In the present case, under the plain language of the MSA, the date the 2021 support payment was due and the dates respondent became entitled to support based on appellant's 2021 stock option income were *not* the same dates. Because respondent had a vested, albeit "immature," right to child support based on appellant's 2021 income from the stock options before appellant filed and served the Request, the trial court did not err in concluding the Request improperly sought retroactive modification of accrued support. (§ 3651, subd. (c)(1).)[7]

## DISPOSITION

The trial court's order is affirmed. Costs on appeal are awarded to respondent.

SIMONS, J.

We concur.

JACKSON, P. J.
CHOU, J.

(A165784)

---

[7] Because we conclude the trial court did not err, we need not address respondent's contention that appellant has not shown prejudice.