[No. G036122. Fourth Dist., Div. Three. Apr. 27, 2007.]

In re the Marriage of ANTONIO and RHONDA TAVARES.
ANTONIO J. TAVARES, Appellant, v.
RHONDA TAVARES, Respondent;
ORANGE COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES,
Intervener and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8-1105(c), 8.110(a) and 8.1120, this opinion is certified for publication with the exception of part II.D.

COUNSEL

Law Offices of John A. DeRonde, Jr., and John A. DeRonde, Jr., for Appellant.

No appearance for Respondent.

Bill Lockyer, Attorney General, Thomas R. Yanger, Assistant Attorney General, Paul Reynaga and Mary Dahlberg, Deputy Attorneys General, for Intervener and Respondent.

OPINION

ARONSON, J.—Antonio J. Tavares (father) appeals from the trial court's order determining his child support arrears for his son, C., who is now 16. Father contends the trial court should have modified his arrears to account for periods Rhonda L. Tavares (mother) allegedly concealed the boy and/or incurred no childcare expenses. Father's arguments fail as a matter of law. The alleged concealment, even if true, is not an obstacle to collection of arrears because the overdue payments will still benefit C. during his minority, when he is entitled to his father's support. (*In re Marriage of Comer* (1996) 14 Cal.4th 504, 515–517 [59 Cal.Rptr.2d 155, 927 P.2d 265] (*Comer*).) And ample authority establishes a parent who has skipped the opportunity to modify a support order may not undermine accrued arrears by later contesting expenses. (See, e.g., Fam. Code, §§ 3653, 3680, 3692; all further statutory references are to this code.) As we explain below, we also reject father's equal protection and due process claims of statutory, institutional, and procedural bias against child support obligors. Accordingly, we affirm the trial court's order.

I

FACTUAL AND PROCEDURAL BACKGROUND

Father and mother married on May 23, 1987, and their son C. was born in 1990. The couple lived in Solano County until they separated in 1993. Mother filed for divorce that year, obtained full custody of C., and moved to Montana. The record does not reflect when the divorce became final, but in March 1995, the Solano County family court entered an order specifying father's child support obligation between December 1, 1994, and June 30, 1996, was $415 per month, including childcare support of $140 per month. The order spelled out that father's child support obligation would decrease to $379 a month, including the $140 ordered for childcare, beginning July 1,

1996, because the parties agreed C.'s visitation with father, and hence father's percentage of primary physical custody, would increase at that time. (See § 4055, subd. (b)(1)(D) [parent's financial support obligation calculated in part based on physical custody].)

The parties returned to the Solano County courthouse in June 1996 to resolve visitation and child support disputes that had erupted in Montana, culminating in a Montana court order purporting to terminate father's visitation until he eliminated his arrearages. The Solano County Superior Court had retained controlling jurisdiction over custody, support, and visitation matters, and therefore determined the Montana order was invalid. In an order filed on November 22, 1996, the court ordered that father's visitation resume. The order also increased father's guideline child support obligation to $501 per month, plus $150 a month for childcare.

Sometime before August 2000, father moved to Rancho Santa Margarita. On mother's behalf, the Orange County Department of Child Support Services (DCSS) registered the Solano County support orders and, based on father's accumulated arrears, obtained writs of execution for $55,197.55 in 2002 and $32,126.26 in 2003. (See §§ 5600 et seq. [intercounty registration of support orders], 17304 [providing for county enforcement of child support orders].) The record is not entirely clear, but father apparently paid all or most of those arrears.

The present round of litigation commenced in October 2004 when DCSS filed a motion to increase father's child support obligation. DCSS requested that the court determine father's arrears to date. Father responded with a declaration claiming that between July 1995 and August 2003, mother concealed C. from him in Montana. Father claimed any arrearages should be reduced in proportion to the time mother prevented him from visiting C. Father also filed a motion to compel mother to produce receipts or other documentation of childcare expenses for C. According to father, the balance of support he owed should reflect the actual costs mother incurred for childcare, if any, rather than the $140 and $150 monthly amounts the court ordered. Father argued that, to the extent his past payments of child support at monthly levels of $140 and $150 exceeded actual childcare costs, he was due a credit for the difference towards his arrears. The trial court concluded that even if father's claims of concealment and overpaid childcare support were true, neither would affect his obligation to pay child support at the amount ordered. The court increased father's child support obligation to $1,168 per month, and father now appeals.

## II

## DISCUSSION

### A. *Concealment*

■ Father contends the trial court erred by not adjudicating his claim mother concealed C. in Montana between 1995 and 2003. The court did not err. Even assuming father's concealment allegation were true, past concealment is not a defense to payment of arrears for a child who is still a minor because the overdue support will still benefit the child. (*Comer, supra,* 14 Cal.4th at pp. 515–517 [noting " 'the child's need for sustenance must be the paramount consideration' " and the support obligation " 'runs to the child and not the parent' "].) The cases father cites are inapposite because they involved attempts by a concealing parent to recoup arrearages after the children attained majority. (*In re Marriage of Damico* (1994) 7 Cal.4th 673, 685 [29 Cal.Rptr.2d 787, 872 P.2d 126] [court barred mother's postmajority collection efforts, which amounted to "seeking payment of the arrearages to *herself,* not to the child"]; *State of Washington ex rel. Burton v. Leyser* (1987) 196 Cal.App.3d 451, 455, 457, 459–460 [241 Cal.Rptr. 812] [same].) Because C. is still a minor, *Comer* controls and father's argument is therefore without merit.

### B. *"Overpayment" of Childcare Support*

Father contends childcare support he paid pursuant to the amounts fixed in the 1995 and 1996 support orders may have been "overpayments" and the trial court erred by declining to reduce his arrearages accordingly. Father argues the trial court should not have quashed his inquiry into whether mother incurred childcare expenses at the amounts ordered, or whether there were periods C. was not in daycare. Father insists that without documented receipts or sworn testimony, an obligor has no assurance a child has received daycare at all. The trial court properly rejected father's attempt to modify the childcare support order retroactively.

■ In addition to basic child support established by the guideline formula in section 4055, subdivision (a), the trial court *must* order certain other costs as additional support, including childcare costs related to employment, training, or education. (§ 4062, subd. (a)(1); see § 4061, subd. (a) [amounts ordered under section 4062 are "additional support"].) The Legislature has

established a bright-line rule that accrued child support vests and may not be adjusted up or down. (See §§ 3651, subd. (c)(1), 3653, subd. (a), 3692.) If a parent feels the amount ordered is too high—or too low—he or she must seek prospective modification. (§ 3653; see § 3680 [directing adoption of simplified method to modify support orders]; Jud. Council Forms, forms FL-390 through FL-393 [forms and information sheets for simplified modification of support order]; see generally *In re Marriage of Armato* (2001) 88 Cal.App.4th 1030, 1037–1038 [106 Cal.Rptr.2d 395].) Accordingly, a trial court has no discretion to absolve an obligor of support arrearages, or interest thereon. (*In re Marriage of Robinson* (1998) 65 Cal.App.4th 93, 98 [76 Cal.Rptr.2d 134, 76 Cal.Rptr. 134]; *Keith G. v. Suzanne H.* (1998) 62 Cal.App.4th 853, 858 [72 Cal.Rptr.2d 525]; *In re Marriage of Perez* (1995) 35 Cal.App.4th 77, 80 [41 Cal.Rptr.2d 377].)

■ True, the trial court may determine a parent has satisfied his or her support obligation in a manner other than direct financial payments, as where the parent assumes increased physical custody of the child. (See, e.g., *Jackson v. Jackson* (1975) 51 Cal.App.3d 363, 367–368 [124 Cal.Rptr. 101]; § 4053, subd. (i) ["It is presumed that a parent having primary physical responsibility for the children contributes a significant portion of available resources for the support of the children"].) And where a parent has made payments beyond those ordered, the court may credit the surplus to arrears. (*In re Marriage of Peet* (1978) 84 Cal.App.3d 974, 980–981 [149 Cal.Rptr. 108].)

These scenarios, however, do not apply to father. Rather, he seeks to be relieved of complying with the childcare support orders to the extent the amounts therein allegedly exceeded actual childcare costs. Section 3692 anticipates and forestalls this argument. There, the Legislature provided: "Notwithstanding any other provision of this article, or any other law, a support order may not be set aside simply because the court finds that it was inequitable when made, *nor simply because subsequent circumstances caused the support ordered to become excessive* or inadequate." (§ 3692, italics added.) Father protests that he does not wish to "set aside" the orders establishing his childcare support obligation, but that is precisely the effect of his proposal for an accounting and recalculation of arrearages. The trial court was not required to countenance father's disguised attempts at a prohibited retroactive modification of support.

■ Notably, section 3691 qualifies section 3692's prohibition against setting aside earlier support orders. Section 3691 allows the trial court to set aside the order where one party has committed perjury or "fraudulently

prevented" the other party "from fully participating in the proceeding" to determine support. (See § 3691, subds. (a) & (b).) But father alleged neither of these predicates. He participated in both the 1995 and 1996 support hearings. He does not claim mother induced him to forgo a claim or alter his participation in the support hearings in any way. And he does not contend mother committed perjury in securing childcare support at the amounts the court ordered in 1995 and 1996. To the contrary, as father phrases it, the support orders had been "based only on initial estimates of childcare costs," the accuracy of which "lapsed." If father harbored a suspicion the court's childcare support orders no longer reflected actual costs, his remedy was to seek prospective modification of his support obligation. (§§ 3653, 3680.) He never did so.

Father excuses his failure to seek modification on grounds childcare costs are "only known to [the] Other Parent" and, here in particular, mother allegedly secreted herself and C. beginning in 1995, preventing him from verifying childcare costs with her, "the child, [or] the daycare provider." But if mistrust arises or one parent goes so far as to conceal the child, that is all the more reason for the other parent to test court-ordered support, including childcare, with a modification petition.

■ Consequently, even if father had alleged below that mother committed fraud or perjury in securing childcare support at the amounts the court ordered, the claim would have been far too late. Section 3691 affords relief only where "the complaining party" acts "within six months after the date on which the . . . party discovered or reasonably should have discovered" the fraud or perjury. (§ 3691, subds. (a) & (b).) Had father filed a modification petition anywhere close to the time he claimed mother began concealing C. in 1995, he could have discovered evidence concerning whether the child was in daycare, how much it cost, and hence whether mother wrongly secured childcare support at the level ordered. Section 3691 therefore does not assist father.

Father argues public policy supports his position the obligee must be prepared to defend childcare support amounts even after they are established by court order. According to father's view of public policy, "There should be an absolute requirement that payees corroborate [childcare] expenses and to make sure that the same are actually incurred, to protect payors." Father suggests: "One way of doing so would be to order direct payment to the provider, which is authorized by . . . [s]ection 2023 . . . ." (See *In re Marriage*

*of Hubner* (1988) 205 Cal.App.3d 660 [252 Cal.Rptr. 428].) Father argues each parent should provide the other with an itemized statement of childcare costs, similar to the procedure the Legislature has established for reimbursement of uninsured health care costs. (§ 4063, subd. (b).)

■ Father mistakes his forum. The Legislature declares state public policy, not the courts. (*Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 71 [78 Cal.Rptr.2d 16, 960 P.2d 1046].) ■ The Legislature has determined that equity favors preserving the option of childcare payments made to the other parent rather than directly to the provider and that, when so ordered, the convenience and certainty of a fixed amount outweigh any benefits of an accounting or itemized statement whenever the child is not in daycare or costs fluctuate. The Legislature has similarly determined equity is not served by retroactive modification of support orders, where simplified procedures are available for prospective modification. (§ 3680.) We may not second-guess these determinations. (*In re Marriage of Perez, supra,* 35 Cal.App.4th at p. 81.) If father wishes to have these matters reassessed and the equities rebalanced more to his liking, he must take the issue up with his elected representatives.

## C. *Constitutional Challenges*

■ Father asserts section 4502 violates state and federal equal protection guarantees by "permit[ting] a payee parent to recover any unpaid child support . . . without a statute of limitations . . . , while preventing a payor from [similarly] recapturing an overpayment . . . ." Section 4502 specifies that the rules applicable to money judgments entered under the Family Code (see § 291) apply to enforcement of child support orders, namely, that the orders are enforceable until paid in full. The statute has nothing to do with "overpayments" as father uses the term, i.e., an obligor's payment of childcare expenses that allegedly were never incurred. Section 4502 does not pertain to adjusting an existing support order or arrearage calculation to correct for such "overpayments"; nor, for that matter, does the statute address what the other parent may insist are *under*payments compared to actual expenses.

■ As discussed, where differences arise between actual expenses and the amount of support ordered, the Legislature has provided for modification of the support order. (§§ 3653, 3680.) The burden, however, rests on *each* parent, respectively, to seek adjustment *going forward.* That is, *neither* the obligor nor the obligee is entitled to modification of support amounts that predate notice to the other party of the filing of a motion to modify support.

(§§ 3651, subd. (c)(1), 3653, subd. (a); see *In re Petropoulos* (2001) 91 Cal.App.4th 161, 174–175 [110 Cal.Rptr.2d 111].) In short, the equal protection violation father perceives in the statutory scheme simply does not exist: the prohibition on prefiling modification applies to obligors and obligees alike.

Father next contends the family court violated due process by *"Reiflerizing"* his motions concerning concealment and childcare support. (See *Reifler v. Superior Court* (1974) 39 Cal.App.3d 479, 484 [114 Cal.Rptr. 356] [recognizing lower court's discretion to decide postdissolution motions solely on the parties' declarations].) Father personally appeared and testified in court and mother did so by telephone, as expressly permitted by section 4930, subdivision (f). Their testimony, however, concerned only C.'s present needs and the level at which father's support obligation should be set prospectively. But, contrary to father's claim, the court did not decide his claims regarding past concealment and childcare support by weighing the parties' declarations on these matters. Rather, the court decided the issues as a matter of law. In other words, even assuming mother and father had testified concerning past visitation and support, and the court had credited every allegation by father, and none of mother's, the court was required to rule as it did on his concealment and overpayment claims, as discussed *ante*. Consequently, the court's procedures did not violate due process.

Finally, father makes a vague allegation of institutional bias concerning the commissioner. He states: "It is well known that the California courts receive federal grant monies to hire court commissioners to hear child support cases. Statistics on child support collection are rigorously maintained by the Federal Government." Father provides no citation on these matters for our perusal but, in any event, nothing follows from his statements. That statistics "are maintained" or that commissioners are hired "to hear child support cases" says nothing about how those cases should be decided. In father's view, the federal government somehow aligned the commissioner against him. But again, his claim of bias fails for a very basic reason: his challenges concerning concealment and childcare support were matters of law, not discretion. Father's claim is therefore without merit.

D.   *Sanctions**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 620.

## III

## DISPOSITION

The order of the trial court is affirmed. DCSS is entitled to its costs on appeal.

Rylaarsdam, Acting P. J., and Fybel, J., concurred.

A petition for a rehearing was denied June 26, 2007, and appellant's petition for review by the Supreme Court was denied August 8, 2007, S153294.