Filed 5/16/16  Marriage of Burmester CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re Marriage of SUZANNE and WILLIAM BURMESTER. | 2d Civil No. B258588 (Super. Ct. No. SD019972) (Ventura County) |
| SUZANNE BURMESTER,<br><br>    Respondent,<br><br>v.<br><br>WILLIAM BURMESTER,<br><br>    Appellant;<br><br>VENTURA COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES,<br><br>    Respondent. | |

William Burmester appeals orders of the family law court determining child support arrears of $97,410.80, among other orders.  We affirm.

*FACTUAL AND PROCEDURAL HISTORY*

On September 1, 1999, the family law court entered a judgment dissolving the marriage of William and Suzanne Burmester.[1]  The judgment incorporated a marital

---

[1] We refer to the Burmesters by their first names, not from disrespect, but to ease the reader's task.

settlement agreement executed by the parties in June 1999. The judgment provided that William pay Suzanne $803 in monthly child support commencing September 1, 1998, for their two minor children. It also stated that the support obligation included $368 base support and $435 daycare allowance.

Thus, section X of the martial settlement agreement provided: "A. Husband shall pay to Wife for the support of the parties' minor children the sum of $803.00 per month, commencing September 1, 1998, payable one-half on the first and fifteenth days of each month and continuing until further order of the court, or until termination of law . . . . Child support shall continue as set forth above and extend as to any unmarried child who has attained the age of eighteen or nineteen, if still in high school and resides with a parent . . . . [¶] B. Such support amount includes both day care reimbursement in the amount of $435.00 and child support in the amount of $368.00 for a total of $803.00 per month and is based upon the figures represented in the attached Dissomaster." (No Dissomaster report was attached.)

From 1998 to 2013, William made child support payments totaling $48,294.50. The payments varied, from $900 monthly to $100 monthly and amounts in-between. From September 1998 through November 2002, William made monthly payments between $700 and $800, with a few exceptions. From December 2002 through February 2010, nearly all payments were $400 monthly. Thereafter, payments varied between $50 and $200.

In 2013, William became disabled and unemployed, and required surgery and rehabilitation. Suzanne also became unemployed in 2013 and, through the Ventura County Department of Child Support Services ("Department"), sought to collect the child support arrears. (Fam. Code, §§ 17000, subd. (h), 17400, subd. (a).)[2] "[F]or a long time," Suzanne had incurred daycare expenses, after-school expenses, and transportation expenses after school for the two children. William believed that Suzanne did not incur

_____

[2] All statutory references are to the Family Code.

any childcare expenses after December 2002, and that the children's maternal grandmother may have cared for them.

On June 12, 2013, William filed a motion to modify the child support order for the remaining minor child and to determine child support arrears. In his trial brief, William argued that the family law court should interpret the 1999 child support order to require reimbursement of the daycare expenses incurred. He asserted that Suzanne must demonstrate that she paid childcare expenses for their two children and that, in any event, the passage of 15 years time precludes her collection of arrears.

At a hearing held on July 3, 2014, the family law court decided that William's child support obligation was $803 monthly from September 1, 1998, through June 30, 2012. The court allocated $138 monthly for the older child and $665 monthly for the younger child. Going forward, the court decided that the older child was now emancipated and it modified the child support obligation accordingly. The parties stipulated that commencing July 1, 2014, the child support obligation became zero.

Also, the family law court adopted William's declaration of payment history, with an additional credit of $200 for March 2010. The court ordered the Department to perform an audit regarding William's payments and it continued the hearing.

On August 19, 2014, the family law court issued its ruling regarding child support arrears. The court determined that the 1999 judgment was enforceable until modified by a later court ruling: "[I]f daycare goes away, then the support order based upon the daycare still keeps ticking away until somebody files a motion to modify." The court relied upon *In re Marriage of Tavares* (2007) 151 Cal.App.4th 620 and section 3692 to conclude that the court may not set aside a support order simply because subsequent circumstances cause the support order to become excessive. The court then determined that William owed arrears of $60,136.35 principal and $27,274.45 interest, for a total of $97,410.80.

William appeals and contends that the family law court erred by not applying general contract principles to interpret the marital settlement agreement

3

provision regarding child support. (*In re Marriage of Schu* (2014) 231 Cal.App.4th 394, 399 [general rules governing interpretation of contracts apply to interpretation of marital settlement agreements].)

## DISCUSSION

William argues that the marital settlement agreement and judgment entered thereon provide for *reimbursement* of Suzanne's daycare expenses for the children, not a $435 payment of additional monthly support. William asserts that *In re Marriage of Tavares*, *supra*, 151 Cal.App.4th 620 is distinguishable and not applicable to his marital settlement agreement. He contends that he simply desires to enforce the agreement he bargained for in 1999.

William adds that the family law court possesses a broad equitable discretion whether to enforce a judgment for child support arrearage. He relies upon *In re Marriage of Boswell* (2014) 225 Cal.App.4th 1172, 1175 [parent's active concealment of children for 15 years equitably estopped her from enforcing 25-year-old judgment for support arrearage].

California law regulates child support; the family law court's discretion regarding child support is controlled by law and the purposes of the law governing child support. (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 283.) Although parents are free to enter into agreements to provide for the support of their children, such agreements are subject to court approval. (§ 4065; *In re Marriage of Alter* (2009) 171 Cal.App.4th 718, 728.) "Thus, under current law, child support orders are always severable from an agreement dividing the marital property and are imposed not by contract but by the power of the court." (*Alter*, at p. 728.) Section 3585 provides: "The provisions of an agreement between the parents for child support shall be deemed to be separate and severable from all other provisions of the agreement relating to property and support of either spouse. An order for child support based on the agreement shall be imposed by law and shall be made under the power of the court to order child support." Although the court may apply contractual interpretations to other portions of a marital settlement agreement, a child support provision is severable and imposed by court order.

4

The child support provisions here, considered together, set forth an obligation of $803 monthly, continuing until further order of the court or termination by law. (Section X(A) of the marital settlement agreement.) The division of the $803 obligation into base support and childcare reimbursement is informational and does not alter the prior language that the $803 obligation continues "until further order of the court or termination by law." Moreover, section 4062, subdivision (a)(1) requires the family law court to order childcare costs related to employment "as additional child support." "In addition to basic child support . . . , the trial court *must* order certain other costs as additional support, including childcare costs related to employment, training, or education." (*In re Marriage of Tavares*, *supra*, 151 Cal.App.4th 620, 625.)

Section 3651, subdivision (c)(1) prevents the family law court from modifying or terminating the 1999 judgment imposing the $803 monthly obligation "as to an amount that accrued before the date of the filing of the notice of motion or order to show cause to modify or terminate." In addition, the order may not be set aside simply because it may have been inequitable when made or subsequent circumstances cause the order to be excessive. (§ 3692.) Thus, "a parent who has skipped the opportunity to modify a support order may not undermine accrued arrears by later contesting expenses." (*In re Marriage of Tavares*, *supra*, 151 Cal.App.4th 620, 623.) The Legislature has established "a bright-line rule" that accrued child support vests and may not be adjusted up or down. (*Id.* at pp. 625-626.)

Moreover, the family law court properly considered and applied *In re Marriage of Tavares*, *supra*, 151 Cal.App.4th 620. There, a parent contested child support arrears regarding childcare expenses and demanded that the other parent produce receipts for the expenses incurred. The trial court quashed the inquiry into the specific childcare expenses and concluded that, even if the claim of overpaid expenses were true, it did not affect the obligation to pay child support at the amount ordered. (*Id.* at p. 624.) On appeal, the reviewing court affirmed and held that, based upon sections 3651, subdivision (c)(1), 3653, subdivision (a), and 3692, the "trial court has no discretion to absolve an obligor of support arrearages, or interest thereon." (*Tavares*, at p. 626.) A

5

parent challenging the amount of the child support obligation must seek prospective modification.  (*Ibid.*)

A family law court, in the exercise of its broad equitable discretion and upon a finding of unclean hands, may decline to enforce a child support arrearage judgment.  (*In re Marriage of Boswell*, *supra*, 225 Cal.App.4th 1172, 1175.)  *Boswell* is not persuasive, however, because here the court made no finding of unclean hands; Suzanne did not actively conceal the children and one child was still a minor at the time she requested enforcement of the arrears.  (*Id.* at pp. 1174-1175.)  The family law judge stated:  "If there [were] . . . inequitable grounds, I would certainly be inclined to think about it."  Moreover, Suzanne's longtime acquiescence in William's payments of less than the amount ordered is not sufficient to constitute waiver or prevent her collection of the arrearage.  (*In re Marriage of Brinkman* (2003) 111 Cal.App.4th 1281, 1290-1291 [statement of general rule].)

The orders are affirmed.  Costs are awarded to respondents.

NOT TO BE PUBLISHED.


GILBERT, P. J.


We concur:


YEGAN, J.


PERREN, J.


6

Rocky Baio, Judge

Superior Court County of Ventura

_____

Law Offices of Laurie Peters, Laurie Peters for Appellant.

Suzanne Burmester, in pro. per., for Respondent.

Kamala D. Harris, Attorney General, Julie Weng-Gutierrez, Senior Assistant Attorney General, Linda M. Gonzalez, Supervising Deputy Attorney General, Catherine A. Ongiri, Deputy Attorney General, for Respondent Ventura County Department of Child Support Services for the Public Interest Pursuant to Family Code Sections 17406 and 17407.