Filed 12/21/23  Marriage of Ay.K. and O.K. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of Ay.K. and O.K. | H049630<br>(Santa Clara County<br>Super. Ct. No. 2012-1-FL-162754) |
| AY.K.,<br><br>    Respondent,<br><br>    v.<br><br>O.K.,<br><br>    Appellant. | |

O.K. (husband) appeals from the family court's postjudgment findings and order after a hearing granting respondent Ay.K. (wife) reimbursements and attorney fees and denying his request for reimbursements, attorney fees, and sanctions.[1]  On appeal, husband argues that the court denied him of a fair hearing by limiting his time and ability to present evidence.  He further argues the court abused its discretion by failing to award him attorney fees even though he prevailed when opposing wife's motions to quash, declining to consider his argument that his obligation to reimburse wife for half the cost

_____

[1] Wife filed a cross-appeal, which she has voluntarily dismissed in her respondent's brief.

of daughter A.K.'s attendance at a therapeutic boarding school should be reduced in part by his payment of base child support for the same time period, and awarding wife reimbursements while denying his request for reimbursements of the cost of health care premiums he had deducted from his support payments. We agree that the court erred by declining to consider husband's argument for a partial offset for child support paid against his share of A.K.'s boarding school expenses and reverse on that basis alone, but we find no merit in his other contentions.

## I. BACKGROUND

### A. *The Parties' Dissolution and Custody Litigation*

Husband and wife married in 1999, separated in 2012, and terminated their marriage in 2013. In 2014, the parties entered a stipulated judgment (2014 judgment) as to certain reserved issues: the parties agreed to equally share the cost of their two minor children's health care insurance and unreimbursed health care expenses as set forth in an attached arbitration order. A Notice of Rights and Responsibilities (FL-192) included in the judgment described the procedure for obtaining reimbursements of the children's healthcare costs, including a requirement that the paying parent provide the nonpaying parent "an itemized statement of the charges that have been billed for any health-care cost" and "[p]roof of full payment." (Boldface omitted.)

Although the 2014 judgment included "a long[-]term custody plan" for continued joint legal and joint physical custody, it did not mark the conclusion of litigation. Starting in spring 2019, the parties' dispute over shared legal and physical custody produced a series of orders starting in August 2019 through October 2020; the court granted wife sole legal custody pending a custody evaluation by an expert appointed under Evidence Code section 730, issued orders following a hearing on the custody evaluation, then modified those orders on wife's ex parte request soon thereafter.

2

This custody litigation in turn occasioned the present litigation over attorney fees and reimbursement of A.K.'s uninsured medical and mental health care expenses that is the focus of this appeal.

**B.** *Wife's Requests for Orders, Attorney Fees, and Husband's Competing Requests*

In January 2021, wife filed a request for order (RFO) seeking $58,900 in attorney fees and $63,138 in reimbursements. Other than $6,049 in base child support payments, the bulk of the reimbursements wife claimed were for expenses wife incurred in exercising sole legal custody of the children—$8,900 for "medical expenses," $28,375 for A.K.'s wilderness program, $645 for "medical expenses," $16,468 for A.K.'s therapeutic boarding school tuition, $1,867 for travel expenses for A.K.'s placement at a wilderness program and her therapeutic boarding school, and $834 for wife and son B.K. to attend family therapy sessions with A.K.[2] Wife based her claim for attorney fees on Family Code sections 2030 and 2032[3] (authorizing an award of need-based fees upon a disparity in access to funds for legal representation) and section 271 (authorizing an award of fees as a sanction for engaging in conduct that frustrates cooperation and settlement).

In June 2011, wife filed a second RFO seeking additional attorney fees and sanctions (the RFO included her motion to quash three of husband's nine subpoenas).

Later that June, husband filed his own RFO requesting attorney fees and sanctions under section 271 totaling $67,363.57, reimbursement of $20,000 in attorney fees already

---

[2] Husband did not designate wife's January 2021 RFO (or any response he may have filed before July 2021) for inclusion in the record on appeal, though it was summarized by the trial court in its subsequent findings and order after the hearing. We rely on the trial court's summary of the relief requested, the accuracy of which the parties do not dispute, to understand what she sought by her January 2021 RFO.

[3] Unspecified statutory references are to the Family Code.

3

paid by husband, and reallocation of 50 percent of fees paid for the parties' 2020 custody evaluation.

In her responsive declaration, wife both opposed husband's request and also increased her request for attorney fees and reimbursements to now seek a total of $116,000 in attorney fees, $91,401 for A.K.'s wilderness and therapeutic schools, and $5,504 in medical reimbursements.

In a July 2021 responsive declaration to wife's RFO, husband both opposed wife's request for sanctions and additional reimbursements and requested that the family court "[o]rder [wife] to pay sanctions due to her conduct." Husband neither cited a statutory basis for this responsive request for sanctions nor specified the amount of sanctions he sought. Husband alleged in this responsive declaration that wife had failed to provide receipts for the medical and school expenses on which she based her reimbursement claims, failed to provide proof that she paid the expenses, and failed to provide documents showing payments by the children's insurance. Husband averred that he had paid wife all amounts that he owed and all his child support payments were current. He further argued that the base monthly support of $2,860 that he had been paying for A.K. "needs to be applied for her benefit" against the claimed therapeutic boarding school expenses and that wife would otherwise be "unjustly enriched by receiving child support for a child who is not living with her, and also having me pay all school and therapy expenses."

In another responsive declaration filed in August 2021, husband again requested attorney fees without referencing a particular amount or statute. As justification, he cited the court's August 2020 custody order that wife collaborate and communicate with husband about A.K.'s progress in treatment, which order he asserted that wife had violated by blocking him from access to basic information about A.K. In furtherance of his request for sanctions, husband issued subpoenas to nine of A.K.'s mental health care providers and schools, seeking "records [that] pertain to: [A.K.]" and writings and

4

evidence of "all communications from [wife], including but not limited to, [wife's] instructions for communicating with [husband]." In May and June 2011, wife moved to quash each subpoena, arguing that the documents that husband sought were privileged and not discoverable. Husband opposed the request and asked the court to sanction wife with an award of fees, again without citing to any particular statutory basis.

## C.    *The First Hearing*

At an April 2021 status conference, before husband had filed any RFO of his own, the court scheduled wife's January 2021 RFO for a one-hour hearing in August 2021. Although husband had objected at the status conference to the adequacy of the one-hour limit, he later requested that his own RFO be heard in that same session, and the court accommodated his request. Husband later requested that the matter be set for a one- or two-day hearing.

At the first consolidated hearing, husband's counsel "reiterat[ed] the request that this be sent to long cause," noting she had "said at each and every appearance this matter is more than one hour." The family court thereafter determined that "we can get through the reimbursement issues" and assured counsel that "[c]ertainly, if we need to reset the attorney's fees, we can do so."

Wife's counsel proceeded by offer of proof, over husband's objection and subject to cross-examination. Through counsel, wife represented the following: She believed the wilderness program was in A.K.'s best interest, so wife incurred $56,750 in associated expenses. A.K. then went to a therapeutic boarding school costing $73,135, and then to a different therapeutic boarding school where wife spent $57,157. Wife sought reimbursement for half the total, or $93,902. As for the Notice of Rights and Responsibilities, the "family did not follow it" and that in the years when the parents were collegial with each other, they never gave each other receipts and relied on sending emails and transferring money back and forth between each other. As for the parties' respective incomes, husband earned $423,000 per year as a company vice president and

had additional income from eight rental properties, while wife earned $12,630 per month as a self-employed tax attorney, spending "her life savings" to pay A.K.'s expenses.

On cross-examination, wife admitted that she never exchanged proof of payment with husband. Wife said that proof of payment for expenses was upon request, but that husband never made a request.

Before husband's counsel finished her cross-examination, the family court informed counsel that only 15 minutes remained in the hearing. The court indicated that if husband's counsel wanted to continue husband's motion to another day, the court could do so, but otherwise the court would "like to utilize this time moving forward substantially." Husband's counsel indicated that she would call husband to testify "over objection" because she was "not being permitted to present the evidence in [her] case regarding [wife's] conduct."

Husband then testified that although he requested as early as March 2020 that wife provide receipts, explanations of benefits, and documents providing proof of payment, he received only some credit card summaries. In two instances, husband did not learn that A.K. had transferred to new therapeutic boarding school until after A.K. had already moved. Although husband had earlier given wife a list of local facilities where A.K.'s care would be covered in whole or in part by health insurance, wife refused to discuss these alternatives with him.

Following husband's testimony, the family court continued the matter to be heard with wife's motions to quash the following month. Wife's counsel objected that "this is my RFO and I would prefer . . . to conclude it today"; husband's counsel objected on the basis that even the continued hearing would not be sufficient time.

**D.** *The Continued Hearing*

By the time of the resumed hearing, the parties had stipulated to joint physical custody of A.K.

6

When technical difficulties prevented husband's vocational expert from testifying by video about wife's earning capacity, husband's counsel indicated that she would be "happy to proceed by offer of proof at this point in time." Through counsel, husband reiterated points he had made at the prior hearing and further represented that he had never agreed to forego receiving bills for their children's services and that it was the parties' practice to send monthly bills for amounts to be reimbursed. Wife had been receiving full child support during the time that A.K. had attended therapeutic boarding schools, which husband's counsel argued "goes toward a *Trainotti*[4] credit."

After husband testified on redirect and wife's counsel asked to call her client in rebuttal, the court responded that it had another matter that would require "a hard stop" of the parties' presentation at 4:00 p.m. Wife therefore proceeded by offer of proof. Through counsel, wife represented that the parties historically never sent each other receipts but that when husband stopped reimbursing her for costs, wife began filing RFOs, starting earlier with reimbursements for the children's extracurricular activities. The court admitted as evidence wife's proof of payments for the therapeutic boarding schools and other expenses over husband's objections.

At the conclusion of the hearing, husband's counsel asked to reserve issues relating to sanctions until she was able to get the documents associated with husband's subpoenas. The court stated that it would "only reserve the part that—that addresses the documents sought in—in the subpoena, which is the basis for the motion to quash."

E. *The Family Court's Findings and Order*

In an October 2021 written order, the family court denied all of wife's motions to quash but found that husband should share in the cost of A.K.'s boarding school and further ordered husband to pay wife for the deductions he had made for health insurance,

---

[4] *In re Marriage of Trainotti* (1989) 212 Cal.App.3d 1072 (*Trainotti*).

the children's cell phones, and other "unexplained withholdings," but the court denied wife's remaining reimbursement requests, such as associated travel costs incurred for wife, B.K., and A.K.. The court further found that husband's request for *Trainotti* credits was not raised in his RFO and was therefore not properly before the court.

As for need-based attorney fees under section 2030, the court awarded wife $30,000, given the disparity in the parties' respective incomes that would persist even if imputing to wife double her actual earnings. The court, however, denied both parties' requests for sanctions and attorney fees under section 271, except as to husband's request for section 271 sanctions relating to wife's violation of the August 2020 order, which were reserved. The court found that neither party had provided a sufficient basis for the amount of attorney fees requested or a correlation between the other parent's conduct and the fees incurred.

Although the court denied husband's request for reallocation of $20,000 in attorney fees previously awarded, it granted him reimbursement of $11,600, half the cost of the custody evaluation.

And finally, the court denied both parties' requests for sanctions under the Civil Discovery Act. The court determined that husband had not given proper notice of the legal or factual basis for the sanctions he sought and that wife had not cited a viable statutory basis for her requested discovery sanctions. To the extent wife alternatively invoked section 271 as a basis for sanctions relating to discovery, the court found that it was wife, not husband, who had engaged in conduct frustrating the policy of the law favoring reduction of litigation costs through cooperation, and she therefore lacked any basis for an award of sanctions payable by husband.

## II. DISCUSSION

### A.    *Limitation on the Presentation of Evidence*

On appeal, husband contends that the family court improperly rejected his counsel's repeated requests for a long-cause hearing and imposed a time limit that denied

8

him a fair hearing, requiring reversal of the October 2021 order in its entirety. We find no basis for reversal because husband has not demonstrated that the court's imposition of the same time limit on both parties constituted an abuse of discretion or that it denied him the ability to present relevant, admissible evidence.

### 1. *Legal Principles and Standard of Review*

Subject to a party's right to be heard, a trial court has a duty to manage hearings with efficiency, which "is not necessarily measured by comparing the actual length of a trial with the parties' original time estimate because parties often overestimate or underestimate a trial's length." (*California Crane School, Inc. v. National Com. for Certification of Crane Operators* (2014) 226 Cal.App.4th 12, 20 (*California Crane*).) The court's "inherent authority and responsibility to fairly and efficiently administer the . . . proceedings" extends to the power to impose time limits before the commencement of trial. (*Id.* at p. 22.) And "[t]he Evidence Code expressly empowers trial judges to limit the presentation of evidence, even evidence that is relevant and probative." (*Id.* at p. 19; see also Evid. Code, § 352 [authorizing exclusion of evidence where its probative value is substantially outweighed by the risk of undue consumption of time].)

We review for an abuse of discretion the trial court's time-management decisions. (*California Crane*, *supra*, 226 Cal.App.4th at pp. 17, 24.) The denial of a party's right to be heard is reversible per se. (*In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281, 291 (*Carlsson*).) Absent denial of a right to be heard, however, " '[n]o form of civil trial error justifies reversal . . . where in light of the entire record, there was no actual prejudice to the appealing party.' " (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 801.)

### 2. *Time Limit*

Nothing in the record suggests that the court here abused its discretion in its imposition of time limits or denied husband the right to be heard.

9

Although husband's counsel consistently maintained that the proceedings would take more than an hour and would require one or two days, the consistency of her position did not compel the conclusion that it was well founded; the crux of the dispute was the parties' competing claims for postjudgment reimbursements, augmented by escalating demands for associated attorney fees and sanctions. We discern no abuse of discretion in the court's apparent determination that the claim for reimbursements could largely be established by documentary evidence of the amounts billed, paid, and disclosed pursuant to the 2014 judgment or that the parties' presentation of their claims and defenses could proceed efficiently in the multiple hours allotted. Indeed, the purely factual dispute underlying the reimbursement claim driving this flurry of litigation appears to have focused narrowly on the extent to which—prior to the hearing—wife had communicated with husband about their daughter's status and provided documentation to support her reimbursement claims. Nothing in the proliferation of RFOs and successive responsive declarations, or in the degree of conflict apparent between the parties (and, even on a cold record, between their counsel) suggests that the court denied husband the right to be heard or abused its discretion in limiting his time to that which was afforded to wife.

Husband did provide written notice before the August hearing that he sought to introduce live testimony from nine witnesses, but other than one witness who was identified but ultimately did not testify at the second hearing date in September, husband has not demonstrated that the witnesses had information material to any issue on which the court ruled. Husband in his section 217 notice represented that the majority of those witnesses would testify about wife's instructions to A.K.'s mental health care providers about communicating with husband—an issue relating to sanctions that was expressly reserved by the court and is not properly before us. Thus, although husband claims on appeal that he was "prevented from calling any of his nine witnesses," there is no ruling

10

by the court precluding him from calling any witnesses with relevant testimony to the orders from which he appeals.

As for the one witness husband called at the September 2021 hearing before apparent technical difficulties prevented the witness from testifying, husband represented only that the witness would "testify to the earning ability of [wife]." Notwithstanding husband's complaint that he was "never given an opportunity to elicit [his witness's] testimony at another point," husband did not seek leave to recall his witness later in the hearing or at a continued hearing. (See *In re Marriage of Elali & Marchoud* (2022) 79 Cal.App.5th 668, 682 [failure to object below in the trial court forfeits issue on appeal].) Moreover, even if the court had denied husband an opportunity to recall his witness, the absence of a more specific offer of proof would prevent us from treating any error as prejudicial: the court in its ruling explained that even imputing to wife double her actual income, the disparity in access to funds would nonetheless support its award of fees. (See Evid. Code, § 354.)

Husband claims that the court "clearly favored [wife's] counsel" in initially setting wife's RFO for an hour-long hearing; his claim of bias is not that the court divided the time unequally between the parties but that it based the one-hour limit solely on the 15-minute time estimate wife's counsel gave for her case in chief. Although the court did not specifically ask husband for his estimate of how much time was needed for hearing on what was then wife's only pending RFO, husband's counsel had volunteered (albeit without venturing a specific estimate of her own) that she did not believe wife's reimbursement claim and fee request could be heard within an hour. And it was husband who, on a later date, invited the court to hear his RFO and request for sanctions at the same one-hour session previously set for wife's RFO. In setting time limits, the court is entitled to consider multiple factors including "the estimates based on the arguments of the parties, the state of the pleadings, the legal and factual issues presented, the number of witnesses likely to testify, the court's trial schedule and hours, and the court's experience

11

in trying cases." (*California Crane*, *supra*, 226 Cal.App.4th at p. 20.) We discern no evidence of bias in the court's implicit conclusion in April 2021 that the estimate provided by wife's counsel was more accurate, given the nature of wife's RFO and the absence at that time of any competing RFO (or even any responsive declaration) by husband.

We reject husband's effort to analogize his case to *Carlsson*, *supra*, 163 Cal.App.4th 281. In *Carlsson*, the disputed issues at trial encompassed permanent spousal support payable by the primary breadwinner in a long-term marriage; the fair market value of the family home; the community's interest in a rental property subject to a third party's claimed partnership interest; and the valuation and division of the community interest in the husband's pension before his post-dissolution contributions. On appeal, the Third Appellate District agreed with the husband that the family court had denied him due process and a fair trial. (*Id.* at pp. 290-292.) In part, the Court of Appeal repeatedly found instances where the court evidenced bias and intemperance toward the husband and husband's counsel—most egregiously, when the court abruptly ended the trial right when the husband's rebuttal witness, set to testify as to the disputed issue of the fair market value of the family home, had just taken the stand. (*Id.* at pp. 285-292.)

*Carlsson* is wholly distinguishable. The issues presented by the parties' RFOs in this case were not complex. Nothing in the record suggests that the family court here failed to extend to husband's counsel the same time, patience and forbearance it extended to wife's counsel—as both counsel repeatedly interrupted each other and the court—both at the status conference when the hearing was initially set and at the hearing on the merits. Although the parties did not litigate or have the opportunity to fully present evidence relating to the issues of sanctions and wife's compliance with the August 2021 order, the court did not deny husband the opportunity to introduce evidence on this particular issue but agreed to *reserve* the issue of sanctions. Unlike *Carlsson*, nothing in

12

the record indicates that the court ever denied husband's request for sanctions on that issue, let alone denied him the reserved opportunity to be heard.

As for husband's complaint that the court here, as in *Carlsson*, used the specter of a mistrial as a "threat," it was husband's counsel at the April 2021 status conference who first declared, "I will ask if we do not finish in each of our half-hour that [the hearing on wife's RFO] be mistried."[5] In this context, the court's subsequent agreement at the status conference that "it will be mistried" cannot fairly be equated with *Carlsson*, where in contrast the court "[u]s[ed] the constant threat of a mistrial" to pressure counsel "into rushing through her presentation" while at the same time "frustrat[ing] the trial's progression" with a "sua sponte order that [husband] produce documents which, as the judge conceded, were not relevant to the issues before him" and then "abruptly end[ing] the trial in the middle of a witness's testimony, prior to the completion of one side's case and without giving the parties the opportunity to introduce or even propose additional evidence." (*Carlsson*, *supra*, 163 Cal.App.4th at p. 292.) Husband's claim that court infringed his right to a full and fair hearing is baseless.

Even if we were to conclude that the court abused its discretion in the stringency of its time limits, husband would have to demonstrate a reasonable probability of a more favorable outcome absent the error. (*Cassim v. Allstate Ins. Co.*, *supra*, 33 Cal.4th at pp. 801-802.) Notwithstanding his claim that he had other evidence to present, he gave the court no meaningful indication of what that evidence would have consisted of below and similarly fails to meet his burden on appeal. (See Evid. Code, § 354, subd. (a) [appellant must show "substance, purpose, and relevance of the excluded evidence was made known

---

[5] Under the applicable local rules, a trial court has discretion to declare a mistrial where a party exceeds time estimates. (Superior Court of Santa Clara, Local Rules, Family rules, rule 5(K).)

13

to the court by the questions asked, an offer of proof, or by any other means"].)  Thus, husband cannot demonstrate that any error was prejudicial.

### 3. *Offer of Proof*

Finally, for the first time in his reply brief, husband argues that the court erred by permitting wife's counsel to proceed by an offer of proof over his objection.[6]  "For obvious reasons of fairness, points raised for the first time in a reply brief will ordinarily not be considered."  (*Rubinstein v. Fakheri* (2020) 49 Cal.App.5th 797, 809.)  Husband having failed to explain why he waited until his reply to raise this issue, we have no reason to relieve him of his forfeiture.  (*Ibid.*)

### B. *Attorney Fees and Sanctions*

Husband argues on appeal that the family court "erred in ruling on [husband's section] 271 motion in its Findings and Order After Hearing after expressly reserving jurisdiction, [and after] agreeing that the documents to be produced after denying the Motions to Quash were a prerequisite."  (Boldface omitted.)  Husband's position was that wife violated the August 2020 order by failing to communicate with him and thwarting communication between himself and A.K.'s care providers—issues that are inextricably intertwined with the issuance of his subpoenas and wife's later motions to quash.  But husband mischaracterizes the court's ruling.  In its order, the court noted that its "hands [were] tied in properly analyzing the Family Code § 271 requests" because "[n]either

---

[6] "A so-called 'offer of proof' may be a substitute for evidence if the parties stipulate that the court may consider it as such.  But the mere offer of proof by one party does not convert counsel's statements as to what a witness would testify to into evidence."  (*Espinoza v. Calva* (2008) 169 Cal.App.4th 1393, 1398; *Mundell v. Department of Alcoholic Beverage Control* (1962) 211 Cal.App.2d 231, 239.)  Here, however, wife's offer of proof largely consisted of representations—backed by exhibits the trial court admitted into evidence—that wife had paid for certain expenses and was owed reimbursements.  Although husband objected to the exhibits' admission, he has not disputed on appeal the propriety of the trial court's evidentiary rulings.

party provided a basis for the amount of fees" sought. But the court expressly reserved jurisdiction on the issue of section 271 sanctions with respect to the motions to quash: "[Husband] and [wife's] request for sanctions under Family Code § 271 is Denied, with the exception of [husband's] requests related only to his position that [wife] violated the August 25, 2020 FOAH, which are Reserved." Beyond misconstruing the court's reservation of jurisdiction over the sanctions issue as a complete denial, husband has not established that we would have jurisdiction to consider his claim under these circumstances. (*Wells Properties v. Popkin* (1992) 9 Cal.App.4th 1053, 1055 ["*denial* of a motion for sanctions is not a judgment and is therefore not appealable"]; but see *In re Marriage of Gruen* (2011) 191 Cal.App.4th 627, 638 [" 'when a court renders an interlocutory order collateral to the main issue, dispositive of the rights of the parties in relation to the collateral matter, and directing payment of money or performance of an act, direct appeal may be taken' "].) We accordingly have no basis to disturb the court's order as to section 271 sanctions.

Husband's additional theory—that the family court erred by failing to grant him attorney fees under Code of Civil Procedure section 1987.2's provision for a discretionary award of fees to a party who prevails in making or opposing a motion to quash—fares no better. Husband forfeited this claim: as the court correctly noted, he "did not identify specific statutory authority in support of his request for sanctions," either in his July 2021 RFO or in opposing wife's motions to quash, leaving only his reserved request for sanctions under section 271.

For the first time on appeal, husband argues Code of Civil Procedure section 1987.2 "required" the court to make findings as to attorney fees and costs, but he misapprehends that provision's unambiguously discretionary language. (See Code Civ. Proc., § 1987.2, subd. (a) [providing that "the court may in its discretion award the . . .

15

reasonable expenses incurred"][7].)  And because husband at *no* point specifically requested attorney fees under Code of Civil Procedure section 1987.2, subdivision (a), his claim that the court failed to award him sanctions under this statute has been forfeited. " ' "[A] party cannot argue the court erred in failing to conduct an analysis it was not asked to conduct." ' "  (*A.G. v. C.S.* (2016) 246 Cal.App.4th 1269, 1289.)

Husband's reliance on *Evilsizor v. Sweeney* (2014) 230 Cal.App.4th 1304 (*Evilsizor*) does not salvage his forfeited claim for a sua sponte award of sanctions under Code of Civil Procedure section 1987.2.  Although the reviewing court in *Evilsizor* affirmed a sanctions order under Code of Civil Procedure section 1987.2, there the respondent had neglected in his motion to cite the statutory basis for the requested award but had in correspondence with the court and counsel prior to the hearing specifically referenced the statute.  (*Evilsizor*, *supra*, at pp. 1308-1309, 1311-1313.)  Accordingly, *Evilsizor* had no occasion to discuss forfeiture, and indeed there was no discussion of forfeiture in its analysis.  We note as well that the affirmance on deferential review of a discretionary fee award does not compel reversal where the court has exercised its discretion to *decline* to award a fee.

C.    *Failure to Consider* **Trainotti** *Credits*

In his responsive declaration to wife's RFO, husband argued that the child support he paid to A.K. should be "applied towards [her] claimed expenses" for the therapeutic boarding school.  It was not until the September 2021 hearing that husband first characterized his argument for this offset as a request for *Trainotti* credits.[8]  A parent may

---

[7] Husband does not rely on subdivision (c) of Code of Civil Procedure section 1987.2, which under circumstances not implicated here provides that "the court *shall* award the amount of reasonable expenses incurred . . . ."  (Italics added.)

[8] Husband's argument about *Trainotti* credits at the September 2021 hearing was limited to the following brief statement:  "Mother was also receiving full child support from father during the time that their daughter—and he would testify—was in the

16

be entitled to *Trainotti* equitable child support credits if he or she has "furnish[ed] [the child], with the approval of the [other parent], a home and support that was equal to or in excess of the court-ordered amount." (*Trainotti*, *supra*, 212 Cal.App.3d 1072, 1076; *Jackson v. Jackson* (1975) 51 Cal.App.3d 363, 366-369 [court has discretion to quash writ of execution or permit partial enforcement of child support arrears for payments husband had withheld when the child lived with husband].) Because husband's request for an offset is at bottom an assertion that his base child support payments *already* covered some of the basic living expenses presumably included within A.K.'s boarding school tuition, his claim does not appear to fit the *Trainotti* mold of an equitable credit against child support arrears. However, because the court erred by concluding that husband had not properly raised the claimed offset, remand is required on this limited issue.

### 1. *Husband Requested an Offset in His Responsive Declaration*

To respond to issues raised in an RFO, the responding party "must set forth facts sufficient to notify the other party of the declarant's contentions in response to the request for order and in support of any relief requested." (Cal. Rules of Court, rule 5.92(g)(1).) But the responding party is not just limited to responding to the moving party's contentions; "[t]he responding party may request relief related to the orders requested in the moving papers." (*Id.*, rule (g)(2).)

Although the family court correctly concluded that husband did not characterize his request for an offset as a request for *Trainotti* credits in his own RFO, the court apparently did not recall that husband *did* request an offset in his responsive declaration

---

therapeutic boarding school and the various placements and that that amount was $2,860 per month. As their daughter was not living with mother at that time, the number should be applied towards any type of expenses their daughter had. And the total for the months their daughter was gone is $37,180. And that goes towards a *Trainotti* credit, which the law provides."

in July 2021, when he contended that he was entitled to some form of credit for the child support he paid while A.K. attended therapeutic boarding school. Husband did not use the term "*Trainotti* credits," but his request was functionally the same as the request he made at the hearing. The court, in its order, did not address the request made by husband in his responsive declaration. Typically, it is a fundamental principle of appellate review that a judgment or order is correct. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 (*Benach*).) And when the record is silent, "we must indulge all intendments and presumptions to support the challenged ruling." (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1271 (*Laabs*).) But here, the court expressly stated in its order that it was not considering husband's request for what he characterized at the hearing as *Trainotti* credits and that the sole reason for not considering the request was its mistaken belief that husband had not made the request in his RFO. This was error.

### 2.    *Remand is Required*

Wife argues that because the family court did not finally determine the rights of the parties or consider the merits of husband's request for an offset, "the issue should be dismissed as nonappealable." But there is no merit in the contention that a discrete issue subsumed within an appealable order is either "appealable" or "nonappealable." An unsuccessful litigant may appeal from a specified judgment or orders, including postjudgment orders made after an appealable judgment of dissolution of marriage. (Code Civ. Proc., § 904.1, subd. (a)(2).) To the extent we construe wife's argument to be that husband's claimed credit is not properly within the scope of the appeal from the October 2021 order, "the reviewing court may review the verdict or decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of the parties." (*Id.*, § 906.) Here, husband argued that he was entitled to an offset with respect to A.K.'s therapeutic boarding school, an issue directly in response to wife's

RFO requesting reimbursement for those fees. The court's decision not to consider whether husband was entitled to an offset necessarily affected its decision to award wife additional child support under section 4062 for those fees.

We agree with wife that the family court's discretion to deny husband's requested credit is broad, and the *Trainotti* line of cases do not provide for the reduction of an obligation to pay uninsured medical or mental health expense by virtue of husband's satisfaction of an entirely separate obligation—base child support. And neither *Jackson* nor *Trainotti* involved the actual, ongoing payment of child support when the child was not residing with *any* parent as a credit against the supported parent's unilateral decision to incur add-on therapeutic or educational expenses that include the child's room and board. But the court, as stated expressly in its order, declined to make any determination as to whether husband merited any offset at all.

The resolution of this issue necessarily rests on issues of fact, such as the amount of child support husband paid to wife while A.K. was in therapeutic boarding school, as well as the application of the facts to law, such as whether any of the cost of the therapeutic boarding school could be considered to have been subsumed within husband's payment of child support. (See *In re Marriage of Tavares* (2007) 151 Cal.App.4th 620, 626 ["the trial court may determine a parent has satisfied his or her support obligation in a manner other than direct financial payments"]; *Y.H. v. M.H.* (2018) 25 Cal.App.5th 300, 307 [trial court has broad enforcement power over child support orders and may give credit for past overpayment or take into consideration whether debtor has satisfied or otherwise discharged obligation].) We express no opinion on the propriety of any offset, either characterized as a *Trainotti* credit or otherwise. " 'Although an appellate court may affirm an order upon a theory of law other than that adopted by the trial court, it is not appropriate to do so by exercising a discretion and making factual decisions to which the trial court has never addressed itself.' " (*Rutan v. Summit Sports* (1985) 173 Cal.App.3d 965, 974.)

19

Thus, we remand the matter to permit the court to consider the evidence (subject to reasonable time limits set in the court's sound discretion) and weigh the equities in the first instance.

**D.    *Wife's Reimbursements***

Finally, husband argues that the court erred by failing to determine whether wife actually supplied proof of payment and by granting wife reimbursements while refusing husband his requested reimbursements.  Husband has not met his burden of affirmatively demonstrating error.

**1.    *Legal Principles and Standard of Review***

The court here ordered husband to reimburse wife for A.K.'s therapeutic boarding school under section 4062, which provides that the court shall order as additional child support "[t]he reasonable uninsured health care costs for the children as provided in section 4063" (*id.*, subd. (a)(2)) and may order as additional child support "[c]osts related to the educational or other special needs of the children" (*id.*, subd. (b)(1)).

Under section 4063, subdivision (b), a parent seeking reimbursement for uninsured healthcare expenses shall provide an itemized statement of costs to the other parent within 30 days.  And section 4063, subdivision (b)(1) requires a parent who has already paid expenses to provide "proof of payment and a request of reimbursement" to the other parent.  The Notice of Rights and Responsibilities incorporates the requirements set forth under section 4063, subdivisions (b) and (b)(1), requiring both that the paying parent give the other parent an itemized statement of charges that have been billed no more than 30 days after the costs have been given to the parent, and if a parent has already paid the uninsured cost, that parent must "give the other parent proof that [he or she] paid them." Section 4063, however, "does not prohibit a party from seeking reimbursement in case of a failure to timely present an itemization of costs."  (*In re Marriage of Rothrock* (2008) 159 Cal.App.4th 223, 236 (*Rothrock*).)

20

Orders regarding reimbursement requests under section 4062 are reviewed for abuse of discretion. (*In re Marriage of Schlafly* (2007) 149 Cal.App.4th 747, 760-761 (*Schlafly*).) " ' " ' " 'Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all the circumstances before it being considered. . . .' " ' As long as there is a reasonable or even fairly debatable justification for the ruling, we will not set it aside." ' " (*In re Marriage of Brooks* (2019) 33 Cal.App.5th 576, 588.) To the extent the reimbursement order turned on the court's findings of fact, we review these findings for substantial evidence, " 'examin[ing] the evidence in the light most favorable to the prevailing party and give that party the benefit of every reasonable inference. [Citation.] We accept all evidence favorable to the prevailing party as true and discard contrary evidence.' " (*Rothrock*, *supra*, 159 Cal.App.4th at p. 230.)

### 2. *Proof of Payment*

Preliminarily, husband argues that the court erred in awarding wife reimbursements because her testimony at the hearing established that she provided "summaries of what she paid" and not actual "proof of payment" as contemplated by sections 4062 and 4063 (see § 4063, subds. (b) [when either parent accrues costs, parent shall provide other parent with itemized statement within a reasonable time but not more than 30 days after accruing costs] & (b)(1) [the paying parent "shall provide proof of payment"]) and echoed in the Notice of Rights and Responsibilities. Husband therefore claims that the court failed to make an express determination on the threshold issue of whether wife sufficiently proved that she paid for the children's uninsured healthcare expenses. Because the court was under no obligation to make express findings, and husband has not otherwise demonstrated error, we reject husband's argument. (*Benach*, *supra*, 149 Cal.App.4th at p. 852.)

At the hearing, wife testified that she "definitely provided" a "summary related to those . . . providers from [her] credit card" to the court and counsel the day before the August 2021 hearing. At the September 2021 hearing, wife's counsel sought to admit

21

into evidence documents identified as Exhibit 1, which she described as "backup documents for the proof of payment that mother has made to the therapeutic boarding schools, as well as the wilderness academy," totaling "[$]197,082." Wife's counsel explained that she had previously "provided other statements," but husband's counsel "wanted more information" and that she had "now provided every proof that exists." When husband's counsel objected to the admission of these documents, wife's counsel explained, "To the extent that there are summaries, those were taken directly, I understand, from [wife's] bank statements and bank records because [husband's counsel] stated that she wanted not only the receipt, but the proof of the payment." Husband's counsel continued to object to the documents, arguing, "This is just a summary. If someone is going to do a summary, they have to attach the necessary documents, and that was not done." The court, over husband's counsel's objection, admitted the documents into evidence.

Following the hearing, the court, in its October 2021 order, did not expressly make findings as to whether wife had submitted proof of payment, though the court observed that noncompliance with the Notice of Rights and Responsibilities was common to both parties. Based on the language of the order, it is plausible that the court found that both husband and wife had not adhered to the Notice of Rights and Responsibilities by failing to *timely* submit proof of payment within 30 days—as opposed to failing to submit proof of payment. And the parties' mutual failures to adhere to the provisions regarding timely notice of payments and itemization of costs under section 4063, subdivision (b) does not bar the family court from ordering reimbursements. (*Rothrock*, *supra*, 159 Cal.App.4th at p. 236.) The Notice of Rights and Responsibilities also does not mandate forfeiture of reimbursements due to noncompliance. Thus, assuming that proof of payment is required for the court to order reimbursement, we must indulge all presumptions in favor of the judgment and infer that that the court made all necessary findings to uphold the judgment. (*Benach*, *supra*, 149 Cal.App.5th at p. 852; *Laabs*, *supra*, 163 Cal.App.4th at

22

p. 1271.)  In other words, we must infer that the court found that wife had submitted sufficient proof of payment warranting reimbursement.

### 3.    *Denying Husband's Reimbursements*

Next, husband argues that the family court abused its discretion (again out of what husband perceives as an unexplained bias) by awarding wife her requested reimbursements but denying his request for reimbursements.  Husband has not demonstrated that the court's order exceeds the bounds of reason.

Beyond A.K.'s therapeutic boarding school, the family court ordered husband to reimburse wife $5,548.62 for husband's deductions from his base child support payments to wife, $3,438 of which was for health insurance.  Husband, however, argues that the court erroneously denied him "reimbursement" of the health insurance coverage premium, where the 2014 judgment provides that wife is to reimburse husband for 50 percent of the cost.  But because there is no dispute that husband had already effected his own "reimbursement" by his unilateral deduction from his monthly base support obligation, his issue is with the court's decision to restore to wife the full amount of base child support to which she was entitled monthly, in whole, and on time.  The court did not deny *husband* a request for reimbursement that he never made.  The court's order was silent as to whether husband was entitled to obtain reimbursement for health insurance expenses as contemplated by the 2014 judgment, should his request comply with the Notice of Rights and Responsibilities.  Indeed, by unilaterally reducing his child support payments, husband unilaterally violated a court order, where the Notice of Rights and Responsibilities on which he elsewhere relies expressly warns that "[a]n order for child support can be modified *only* by filing a motion to change child support and serving each party involved in your case."  (Italics added.)  And nothing in the record indicates that husband complied with any other provision of the Notice of Rights and Responsibilities before making his unilateral deductions from court-ordered monthly basic child support,

23

the regular receipt of which wife was entitled to expect without deductions not noticed, discussed, or documented.[9]

Husband also argues that the court did not address wife's delay in seeking her own claimed reimbursements and further claims that mother did not provide any good reason as to why she delayed in her request. But in granting wife reimbursement, the court implicitly found that she did not act unreasonably under the circumstances. (See *Rothrock*, *supra*, 159 Cal.App.4th at pp. 236-237.) Husband further claims that wife clearly violated court orders, including prior orders requiring her to communicate with and collaborate with husband, but the court still granted her request for reimbursement, exceeding the bounds of reason. But the court here articulated a clear reason for granting mother her reimbursement notwithstanding her noncompliance with prior orders—that it was in the best interest of the children and that the court had, in prior orders, determined that wife was in the best position to determine whether a program such as the therapeutic wilderness camp was in A.K.'s best interest. We do not find this exercise of discretion to exceed the bounds of reason. (*Schlafly*, *supra*, 149 Cal.App.4th at pp. 760-761.)

Accordingly, husband has not met his burden on appeal to demonstrate that the court abused its discretion when ordering reimbursements in its October 2021 order.[10]

---

[9] Husband also does not provide additional information about the children's health care insurance—he points to no record evidence that his unilateral deductions from child support were in fact for health care costs reimbursable under the October 2014 judgment.

[10] Husband also cites to an unpublished Court of Appeal decision in his opening brief, which is generally prohibited under California Rules of Court, rule 8.1115(a). In his reply, husband argues that the citation was proper under rule 8.1115(b), which permits citations to unpublished decisions "[w]hen the opinion is relevant under the doctrines of law of the case, res judicata, or collateral estoppel." We cannot conceive of how the unpublished case cited by husband, which is not procedurally related to the case at bench, would fall under any of these doctrines. We therefore disregard it, noting counsel's improper usage.

## III. DISPOSITION

The family court's October 2021 order after a hearing is reversed for the limited purpose of permitting the court to consider whether reimbursements to wife for A.K.'s therapeutic boarding school should be offset by the base child support already paid for during the period of A.K.'s attendance. In the interests of justice, the parties shall bear their own costs on appeal.

_____
LIE, J.

WE CONCUR:



_____
GROVER, ACTING P.J.



_____
BROMBERG, J.



*Ay.K. v. O.K.*
H049630